```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MATTIEU BURKS,

                         Plaintiff,

vs.                                              16-CV-759

CORRECTION OFFICER CHAD STICKNEY, et al.,

                         Defendants.
------------------------------------------------------------x
```

*Telephone Conference – July 7, 2017*

James Hanley Federal Building, Syracuse, New York

HONORABLE DAVID E.PEEBLES

United States Magistrate Judge, Presiding

A P P E A R A N C E S (by telephone)

| | |
|---|---|
| For Plaintiff: | STOLL, GLICKMAN & BELLINA, LLP<br>Attorneys at Law<br>475 Atlantic Avenue<br>Brooklyn, New York 11217<br>  BY: LEO GLICKMAN, ESQ. |
| For Defendants: | NEW YORK STATE ATTORNEY GENERAL<br>The Capitol<br>Albany, New York 12224<br>  BY: DENISE P. BUCKLEY, AAG |

*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*P.O. Box 7367*
*Syracuse, New York 13261*
*(315)234-8546*

1      THE CLERK: Counsel, we're on the record. Case is
2 Mattieu Burks versus Chad Stickney, et al.; 16-cv-759.
3 Counsel, please note your appearance for the record.
4      MR. GLICKMAN: Yes, good morning. Your Honor, this
5 is Leo Glickman for the plaintiff, Mattieu Burks.
6      MS. BUCKLEY: And this is Assistant Attorney
7 General Denise Buckley for the defendants.
8      THE COURT: Good morning. I thought I would get us
9 together and discuss the most recent two letters, and in
10 particular the response from the defendants.
11     Ms. Buckley, I'm trying to understand what the
12 defendants' position is. I received kind of mixed signals
13 when I reviewed your letter and then the accompanying
14 affidavit of Mr. Mousseau. So the last sentence of the first
15 paragraph of your letter indicates, "Please note that none of
16 the defendants in this matter possesses information
17 responsive to the Court's request, and have no way of
18 personally obtaining it."
19     My question, I guess, is are you now asserting that
20 the defendants do not have access to the information that I
21 ordered be produced, and, if so, are you suggesting that the
22 information will have to be obtained from the Department of
23 Corrections and Community Supervision through Rule 45
24 subpoena and either deposition or document request?
25     MS. BUCKLEY: Your Honor, I'm not suggesting that

1   the information needs to be obtained through a subpoena.  I
2   just want to make it clear to the Court that the defendants
3   are making a good faith effort to comply with the Court's
4   order, but the compliance with the Court's order is really
5   out of the hands of the actual defendants to this litigation.
6   DOCCS, the Department of Corrections and Community
7   Supervision, is not a party to this proceeding; they're a
8   non-party.  But they are cooperating with us.  And they
9   indicated, as set out in the affidavit of Shawn Mousseau,
10  that they won't be able to give an estimate as to when the
11  information ordered by the Court can be collated until mid
12  August.  So in mid August they'll be able to advise us as to
13  how long they think it will take for them to be able to
14  comply with the Court's order without a subpoena, Your Honor.
15           THE COURT:  And I guess what was missing, from my
16  perspective, that would allow me to better understand what is
17  required in order to comply with my court order is an
18  indication from Mr. Mousseau of the volume of OSI
19  investigations.  I don't have any way of knowing.  But I
20  guess my sense is that if we are talking about a finite time
21  period of several months, January 1 through August 31, so I
22  guess that's eight months, and we're limiting it to Clinton,
23  gosh, my sense is if there is a handful of OSI investigations
24  that were ongoing at that time at Clinton, I would be
25  surprised.

1    And so do you have a better sense of the volume
2    that we're talking about?  I mean, OSI seems to be a fairly
3    small office.  They investigate claims of inmate abuse,
4    excessive force, that kind of thing.  Are we talking about a
5    big volume?
6    	MS. BUCKLEY:  Your Honor, I have no additional
7    information other than what's provided in the affidavit of
8    Shawn Mousseau.
9    	THE COURT:  And the other thing that strikes me,
10   Mr. Mousseau's affidavit was fairly vague and suggests that
11   he has to literally go to a file drawer, pull out all of the
12   investigations that were ongoing for any facility over this
13   period of time, and then go through them one by one, pick out
14   the ones that involve Clinton, and then look to see if they
15   involved either inmate abuse or smuggling.  And yet the
16   summary that was attached to the letter from plaintiff's
17   counsel contains information that I would think would be
18   queriable, if that's a word.  It looks to me like there is a
19   database that would produce the summaries, the example is
20   attached to Mr. Glickman's letter, it shows date assigned,
21   date received.  It lists the employees involved, which is one
22   of the things that I required in my order.  It lists the
23   facility name.  And then it summarizes the investigation and
24   gives an indication as to when the file was closed.
25   	Isn't there a database that could be queried that

1  would pop out all of those that were involved at Clinton
2  Correctional Facility?  Do you know?  And, if not, would
3  Mr. Mousseau know and would we be able to find that out from
4  him?
5              MS. BUCKLEY:  Your Honor, what I've been instructed
6  by DOCCS is that they cannot conduct a search by subject
7  matter.  So I understand your point.
8              I should note to the Court that that record that
9  Mr. Glickman posted on the Court's docket is still the
10 subject of a protective order and it never should have been
11 posted on the docket in the first place.
12             However, just looking at the information that's
13 contained within that document, I don't think we can make
14 that assumption.  And certainly the information that DOCCS
15 has provided me is that they cannot conduct a search by
16 subject matter.  The information they provided me is that,
17 just as Your Honor indicated, the search has to be conducted
18 by hand through a manual review of the documents on file with
19 the OSI in order to fully comply with the Court's order.
20             THE COURT:  Well, I can understand -- again, the
21 nature of the allegation, the allegation here is listed as
22 assault.  So let's assume that we can't conduct a search by
23 using words like assault, abuse, smuggling, but the date
24 received and certainly the facility, I'm wondering why they
25 can't query the database for any investigations at Clinton

1  from 1/1 to 8/31 and then hand search them to see what the
2  nature of the allegation is.  And that sounds to me like you
3  don't really know whether that's possible or not.
4         MS. BUCKLEY:  Your Honor, the information I have is
5  all of the information that's set out in Inspector Mousseau's
6  declaration, and as he has indicated in the declaration,
7  apparently he is the only person at the OSI who can conduct
8  the search that's been requested by DOCCS.  He has indicated
9  in his declaration that it will take two weeks for him to
10 conduct that search; however, he has other constraints
11 because he is going to be out for a period of time on
12 paternity leave, and also he has other pressing matters that
13 he has to deal with that he has to prioritize.
14        I should note Mr. Glickman did indicate in the
15 letter that he filed on the docket, at docket number 66, that
16 he has no difficulty or he consents to OSI coming back with
17 the information as indicated in Inspector Mousseau's
18 declaration by mid August.
19        MR. GLICKMAN:  Yes, Your Honor.  And that is
20 correct, in trying to just move things along, I'm not going
21 to demand that be produced prior to me conducting the
22 depositions of the defendants.  However, I just heard
23 something different from Ms. Buckley than from what I
24 understood in the letter, which was she said that by mid
25 August she could tell us or Mr. Mousseau could tell us how

1   long it's going to take.  And I understood the letter to mean
2   that by mid August this information could be produced.
3          And so I'd like a clarification on that because
4   what we agreed to is that if it could be produced by mid
5   August, clearly obviously before the discovery deadline, then
6   we would just agree with that rather than continue this
7   discussion with the Court.
8          MS. BUCKLEY:  For the avoidance of any doubt, what
9   was meant in the letter was exactly what was stated in
10  Inspector Mousseau's declaration, which is that he won't know
11  until mid August when he conducts his initial search as to
12  how long it will be that he will be able to provide the Court
13  with the requested information.
14         So I'm not saying that he can provide the
15  information in mid August; I'm just saying that he can
16  provide us with an estimate in mid August.
17         MR. GLICKMAN:  That's something obviously we can't
18  consent to because we have an end of August discovery
19  deadline, so I'm not even really -- I don't think I'm
20  authorized to consent to that, Your Honor.
21         THE COURT:  Well, you mentioned the possibility of
22  a deposition of Mr. Mousseau in your letter.  You know, to me
23  the Mousseau declaration is ambiguous and there are questions
24  that are unanswered in that declaration.
25         Is that something you're considering, Mr. Glickman,

is taking Mr. Mousseau's deposition, which you have every right to do, either having him voluntarily produced by the DOCCS or through a Rule 45 subpoena, that would allow you to better understand and the Court, frankly, what the constraints are in complying with the Court's order?

      MR. GLICKMAN:  Your Honor, I'm certainly willing to do that.  You know, I would love to avoid that because, you know, as you know, depositions are expensive.  Ms. Buckley has said to me already that anyone who is not a defendant, I would have to go and subpoena, which is obviously costly for me.

      But, nevertheless, we're prepared to do what has to be done in order to accomplish our goal here, which is to get all the facts we can before the close of discovery.  So, yes, that's something I would do, I'd be willing to do, and I'd be willing to subpoena him.

      Your Honor, I just want to add, and I didn't submit this because, frankly, this was a short time and I just found it this morning, but there is an article in the *New York Times* that quotes a DOCCS spokesperson saying that -- I understand this relates to grievances, but, you know, that's a much larger file than the OSI file, I would imagine.  And they said that by 2016 -- it mentions how a judge castigated the DOCCS for not having this stuff kind of in a database, and they said that they would by 2016.  You know, that's a

1  newspaper article, so give it what it's worth, it's in the
2  *New York Times*.
3        But again, I do find it kind of incredible that one
4  way or another that if they don't have this in a database
5  then, you know, that speaks to something not very good but
6  entirely different.  So, Your Honor, at any rate, I'm
7  certainly willing to do that, to conduct that deposition.
8        THE COURT:  Well, and here's my problem; I'm in a
9  little bit of a difficult position.  If this was an affidavit
10 from a defendant and the defendant was telling me that he
11 could not comply with the Court's order, I would be furious,
12 there would be a hearing as to whether he should be held in
13 contempt.
14       MR. GLICKMAN:  I understand.
15       THE COURT:  And I would have an evidentiary hearing
16 and I would want Mr. Mousseau to get on the stand and tell me
17 the answers to these questions that I've just asked.  He is
18 not under my control.  I'm counting on the cooperation,
19 frankly, of the DOCCS at this point to provide the
20 information that has been requested that I think in fairness
21 you should have in order to try to prove your case.
22       And so I think the only alternative at this
23 point -- and I, frankly, contemplated the idea of the Court
24 issuing a subpoena to Mr. Mousseau to have him come in and
25 testify and give answers to these questions, but I'm not

1  prepared to do that at this time.  I think the only
2  alternative really is for you to take his deposition after he
3  returns on July 17 from paternity leave and ask him these
4  questions and then I can make a ruling as to how we should
5  proceed.
6  　　　　　The other thing that has been introduced that I,
7  frankly, had lost sight of was Mr. Glickman's request that
8  that this order be construed to include investigations of the
9  New York State Inspector General.  And I don't know, we
10 really haven't discussed that particular issue.
11 　　　　　Do you have a position, Ms. Buckley, as to whether
12 or not that type of information would be available to you and
13 whether you would be willing to produce the information
14 that's required by court order with respect to the New York
15 State Inspector General's investigations at Clinton?
16 　　　　　MS. BUCKLEY:  Your Honor, DOCCS has informed me
17 that they have no authority or jurisdiction over the State
18 Inspector General, and I think any information that is to be
19 obtained from that agency would have to be obtained through a
20 subpoena.
21 　　　　　THE COURT:  All right.  Fair enough.
22 　　　　　MR. GLICKMAN:  That certainly -- obviously,
23 DOCCS -- I think we discussed this at the first court
24 conference about this issue.  Obviously, DOCCS does not have
25 jurisdiction over the Inspector General's Office, which is a

1  separate state agency, but I think the Court, and I thought
2  we all agreed, that when we -- for example, when we excluded
3  the FBI, any FBI investigation, that it would be any agency
4  that is within the state's jurisdiction, not DOCC's
5  jurisdiction.  So this puts us behind if I have to subpoena,
6  but I certainly will do that if the Court orders.  But my
7  understanding of the original Court order was that it would
8  be any agency within the state jurisdiction and that
9  Ms. Buckley had agreed to that, but that was my understanding
10 of that discussion.
11          MS. BUCKLEY:  My understanding of the Court's order
12 and what I've requested DOCCS to do is to provide us with
13 information about any investigations into DOCCS employees at
14 Clinton during the relevant time frame into smuggling or
15 secreting of contraband or prisoner abuse to the extent that
16 DOCCS is aware of any special investigations of outside
17 agencies.
18          And looking at the Mousseau declaration, I didn't
19 think it directly addressed that point, but I confirmed my
20 instructions this morning and DOCCS advised me that the
21 information, the estimate of the time frame that it will take
22 DOCCS to come back with that information will be included in
23 mid August when Inspector Mousseau provides an estimate as to
24 how long it will take him to provide the information, but
25 DOCCS is also going to provide us with the estimate of how

1  long they think it will take them to come back with the
2  information about investigations of outside state agencies to
3  the extent they have that information.
4           THE COURT:  Let me see if I understand you, because
5  it would seem to me that at some point DOCCS would be
6  notified if the Inspector General or some other state agency
7  was conducting an investigation at Clinton into these types
8  of matters.  It would seem to me DOCCS would -- someone at
9  DOCCS would be notified at some point.
10          So you're saying that in mid August you will
11 also -- the DOCCS is agreeing to provide any information as
12 to other state agencies' investigations to the extent that
13 they, being the DOCCS, are aware of those investigations?
14          MS. BUCKLEY:  Your Honor, DOCCS has said to me that
15 it will take them until the middle of August to provide the
16 Court with the number of investigations open regarding staff
17 at Clinton during the relevant time frame to the extent that
18 DOCCS is aware of such investigations.
19          THE COURT:  All right.  So mid August meaning by
20 August 18?
21          MS. BUCKLEY:  Let me just make sure that's not on
22 the weekend, Your Honor.
23          THE COURT:  It's a Friday.
24          MS. BUCKLEY:  Yes, Your Honor, I think that's my
25 understanding of what they're saying.

1               THE COURT:  And how will that information be
2    conveyed?  Do you intend to file it with the Court?
3               MS. BUCKLEY:  Well, my understanding of the Court
4    order -- sorry, I would just have to go back and look.  I
5    thought we were to provide it to plaintiff's counsel.
6               THE COURT:  Yes.  And that's fine.  It doesn't need
7    to be on the docket sheet, but I do then want to get us back
8    together and discuss what was contained in that report that
9    you provided to plaintiff's counsel the week after.  So can
10   you both be available on August 24th at 4:00?
11              MR. GLICKMAN:  Your Honor, I will actually be away
12   but I can prepare one of my associates for this issue.  I'll
13   have them put in a notice of appearance or I could do it
14   after -- the 24th, what day of the week is that?
15              THE COURT:  Thursday.  Are you away that entire
16   week?
17              MR. GLICKMAN:  Actually, you know what, I could do
18   it on -- I can do Friday the 25th, if that's possible.  I'm
19   actually back on that Thursday.
20              THE COURT:  All right.  Can we say 2:00 on the
21   25th?
22              MR. GLICKMAN:  Yep.
23              MS. BUCKLEY:  That's fine for me too, Your Honor.
24              THE COURT:  Okay.  And Mr. Glickman, can I get you
25   to place the next call?

1          MR. GLICKMAN:  Sure.
2          THE COURT:  So let's stay the deadlines in this
3    case pending our conference on the 25th.
4          I guess my next question is how are things going
5    with regard to the deposition schedule?
6          MR. GLICKMAN:  Well, Your Honor, I'll just say that
7    we actually got the photo array which we had discussed done
8    yesterday with Mr. Burks, so I was with him yesterday.  So
9    that got done.  I'll let Ms. Buckley speak.  I'm really
10   waiting to hear from them about when they want to do that.
11   We were hoping to get all of that done the month of July, but
12   I know she has a lot more people to reach out to and my
13   client is a lot easier to schedule than her client, so I'll
14   let her speak to that.
15         MS. BUCKLEY:  Yes.  I mean, I've reached out to all
16   of the defendants with the exception of one of the
17   defendants, he is retired, and my understanding is that
18   they're all available within the time frame that we've
19   already discussed.  And so, yes, I think, Your Honor, I think
20   that we should be in a position to have the depositions
21   completed before the August 25th phone conference.
22         THE COURT:  Excellent.  Have you scheduled any yet?
23   Have you scheduled the plaintiff's deposition?
24         MS. BUCKLEY:  No, we have not, Your Honor.  That's
25   something Mr. Glickman and I were discussing.

```
 1            THE COURT:  Okay.  Excellent.
 2            MR. GLICKMAN:  Yeah.  As I said, Denise, I've made
 3   most of July available, so, you know, whenever you feel
 4   you're ready, we could do it.
 5            THE COURT:  Very good.  All right.  Anything else
 6   either side would like to raise this morning?
 7            MR. GLICKMAN:  No, that's it, Your Honor.  I
 8   just -- forgive me, I hope I'm not wasting the Court's time,
 9   since I'm not present in the court, and I don't think
10   Ms. Buckley is either, just to order minutes.  This was
11   public so I assume there is a court reporter in the
12   courtroom?
13            THE COURT:  There is.
14            MR. GLICKMAN:  And did this happen in Syracuse or
15   Albany, just so I know where to call to obtain the minutes.
16            THE COURT:  Syracuse.  Eileen McDonough was the
17   court reporter.
18            MR. GLICKMAN:  Okay.  So we'll reach out to her.
19            THE COURT:  Excellent.
20            MS. BUCKLEY:  Before we end the conversation, I
21   would be grateful if Mr. Glickman could be a bit more mindful
22   of the protective order that's in place in the case.  Because
23   as I indicated earlier, information that was subject to the
24   protective order was incorrectly posted by Mr. Glickman on
25   the court's docket on Monday evening, and shortly after I
```

```
 1  pointed that out to him, he did take measures to remove it
 2  from the Court's docket, so I would ask that Mr. Glickman be
 3  more mindful of the protective order.
 4          MR. GLICKMAN:  So noted.
 5          THE COURT:  I'm sure it was inadvertent and we did
 6  take steps to file that under seal.  Good.
 7          MR. GLICKMAN:  Please thank your court secretary
 8  for me, by the way, if she's listening.
 9          THE COURT:  Will do.
10                   *              *              *
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

C E R T I F I C A T I O N

     I, EILEEN MCDONOUGH, RPR, CRR, Federal Official Realtime Court Reporter, in and for the United States District Court for the Northern District of New York, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

_____
EILEEN MCDONOUGH, RPR, CRR
Federal Official Court Reporter