UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

MATTIEU BURKS,

|  |  |
|---|---|
| *Plaintiff,* | **DECLARATION OF** |
|  | **DENISE P. BUCKLEY** |
| -against- |  |
|  | 9:16-CV-759 |
| CORRECTION OFFICER CHAD STICKNEY; |  |
| CORRECTION OFFICER NOLAN; CORRECTION | FJS/DEP |
| OFFICER SMITH; CORRECTION OFFICER EDWARD |  |
| L. PEPPER; SERGEANT JOHN MARK CROSS; |  |

CORRECTION OFFICER CHAD STICKNEY;
CORRECTION OFFICER NOLAN; CORRECTION
OFFICER SMITH; CORRECTION OFFICER EDWARD
L. PEPPER; SERGEANT JOHN MARK CROSS;
CORRECTION OFFICER DAVID J. CHAMBERLAIN;
CORRECTION OFFICER JOSHUA R. WOOD; JOHN
DOE "E" BLOCK SERGEANT; SUPINTENDENT
STEVEN RACETTE, SUPERINTENDENT MICHAEL
KIRKPATIRCK, JOHN DOE SUPERVISOR IN CHARGE
OF SECURITY #1, JOHN DOE CORRECTION
OFFICERS ##1-25,

*Defendants.*

---

       Denise P. Buckley, an attorney admitted to practice in the State of New York, affirms under penalty of perjury:

       1.     I am an Assistant Attorney General of counsel in this matter to Eric T. Schneiderman, Attorney General of the State of New York, attorney for Defendants Chad Stickney, Darwin Nolan, Donald Smith, Jr., Edward Pepper, John Cross, David Chamberlain, Joshua R. Wood, Steven Racette, and Michael Kirkpatrick (collectively referred to herein as "the Defendants").

2.      I make this affirmation in opposition to plaintiff's motion for sanctions pursuant to Rule 37 and the inherent power of the court.  Dkt. No. 81.

3.      I respectfully refer the court to the Declarations of Michael Kirkpatrick and Cassandra Savage likewise submitted in opposition to Plaintiff's motion.

4.      Rule 37 of the Federal Rules of Civil Procedure provides that the court may impose sanctions if a party fails to obey an order to provide or permit discovery.  See Fed. R. Civ. P. 37(b)(2)(A).

5.      In addition, Rule 37 provides that the court may order a disobedient party, or the attorney advising that party, or both, to pay reasonable expenses, including attorney fees, caused by a party's failure to obey a discovery order "unless the failure was substantially justified or other circumstances make an award of expenses unjust."

6.      Plaintiff's motion should be dismissed as plaintiff's motion is not premised on a failure by the defendants to obey an order to provide or permit discovery.

7.      In fact, plaintiff has not pointed out a single item of outstanding discovery.

8.      Discovery in this matter was closed on October 31, 2017.

9.      Defendants fully cooperated with the production of discovery and complied with all discovery orders, providing plaintiff with over 1,400 pages of material responsive to plaintiff's discovery demands.

10.      Rather than provide a valid basis for relief pursuant to Rule 37, plaintiff's motion is premised on: (1) his mischaracterization of the defendants as insisting on conducting their depositions in Dannemora, NY; (2) his mischaracterization of the defendants as making last minute changes to the terms of the photo array shown to plaintiff; (3) his absurd and baseless accusation

2

that AAG Buckley identified "Luke Nolan" as the "Correction Officer Nolan" in the caption and deliberately mislead the plaintiff throughout this litigation as to the identity of Officer Nolan; (4) defendants' good faith scheduling difficulties with the depositions of Superintendent Kirkpatrick and retired Superintendent Racettte; and (5) a number of vague, unsubstantiated allegations that the defendants repeatedly obstructed discovery.  As set forth more fully below, there is no merit to any of these contentions.

I. **Plaintiff's mischaracterization of the defendants as insisting on conducting their depositions in Dannemora.**

11.     On May 19, 2017, plaintiff served notices to take the depositions of seven of the defendants in this matter on dates between June 20, 2017 and June 29, 2017 in Albany, New York.

12.     At no point prior to serving the deposition notices did plaintiff's counsel consult with me about the dates or location of the depositions; however, in his e-mail forwarding the deposition notices he stated that the "dates are flexible according to your schedule and that of your clients."  See **Exhibit A** hereto.

13.     Upon receipt of plaintiff's deposition notices, I endeavored in good faith to coordinate the depositions of the seven defendants at mutually agreeable times and locations, bearing in mind that the deadline for the completion of discovery was August 31, 2017 (see Dkt. No. 24), the short notice on these seven defendants just a few weeks before summer was likely to be problematic, and all of the defendants were based in the Dannemora area.

14.     It is worth noting that our office had served a Notice to take the plaintiff's deposition on October 25, 2016, but plaintiff had not appeared yet for deposition as plaintiff's

counsel repeatedly sought to adjourn it.  Attached hereto as **Exhibit B** is Defendants' Notice to take plaintiff's deposition and cover letter.

15.     Plaintiff eventually appeared for deposition on July 14, 2017.

16.      One week after receiving plaintiff's deposition notices, I advised plaintiff's counsel by e-mail, dated May 26, 2017, that I had made contact with all but one of the seven defendants, four of whom were available on the dates he requested, and two of whom were available on alternative dates within the June 20th to June 29th time frame contained in the deposition notices.  See **Exhibit C** hereto.

17.     Plaintiff's baseless assertion that "All defendants refused to appear at depositions anywhere other than Clinton Correctional Facility" (Plaintiff's Memorandum of Law at Dkt. No. 81-1, p. 2) is premised on my statement in that e-mail that the defendants were going to appear at Clinton Correctional Facility for their depositions rather than Albany.

18.     I have no recollection of the phone call in which plaintiff claims he asked if we would reconsider holding the depositions in Albany to which he claims I provided "an unequivocal 'no'" (plaintiff's Memorandum of Law, Dkt. No. 81-1, p. 2), but my next e-mail to plaintiff's counsel was four days later, on May 30, 2017, in which I stated that we would endeavor to make the witnesses available in Albany for their depositions.  See **Exhibit D** hereto.

19.     Plaintiff's claim that the defendants engaged in obstruction and "flat out refuse[d] to appear in Albany" (plaintiff's Memorandum of Law, Dkt. No. 81-1, p. 2) is an incorrect characterization of the defendants' position and it certainly is not born out by the record.

4

20.     In fact, plaintiff's counsel was less than cooperative in the scheduling of his own client's deposition and tried to push the defendants' depositions forward before plaintiff's deposition took place, as reflected by the June 13, 2017 text minute entry in the court's Docket.

21.     Ultimately, the depositions of five defendants were completed and all took place in Albany, NY, with the exception of the deposition of defendant Racette which the court allowed to proceed in Plattsburgh, NY.  See Dkt. No. 82.

22.     The depositions of the remaining four defendants did not take place which appears to have been a deliberate choice by plaintiff's counsel as he indicated on several occasions that he was forming the view that their depositions would not be necessary (see the e-mails from plaintiff's counsel, dated July 5, 2017 and June 28, 2017, attached hereto at **Exhibits E** and **G** respectively), he made no mention of the depositions after that, and he makes no mention of them in the instant motion.  See Dkt. 81.

23.     In fact, on July 5, 2017, plaintiff's counsel served Notices to Admit directed to defendants Pepper and Smith, along with an e-mail in which he stated that he hoped their responses would eliminate the necessity of having to avoid their depositions.  See **Exhibit E** hereto.

24.     Defendants' responses to plaintiff's Notices to Admit were served on August 3, 2017 (see **Exhibit F** hereto) and plaintiff did not pursue the depositions of defendants Pepper and Smith thereafter.

II.     **Plaintiff's mischaracterization of the defendants as making last minute changes to the terms of the photo array shown to plaintiff.**

25.     There is no basis to plaintiff's contention that I or the defendants proceeded in bad faith with regard to the photo array viewing that took place on July 6, 2017.

26.     The photo array viewing was the subject of an application for a temporary restraining order which plaintiff filed on June 14, 2017 (Dkts. No. 55-56) which the court decided the same day.  Dkt. No. 58.

27.     Shortly after the court's decision issued, the defendants filed a letter with the court later that same day to make it clear that it was defendants' position that plaintiff's motion was based on a materially false allegation and defendants had written to plaintiff's counsel setting out the exact position with respect to the photo array and had requested that plaintiff's counsel immediately withdraw the motion.  Dkt. No.  59.

28.     As set forth in the letter setting out the position with regard to the photo array, arrangements were made, at plaintiff's request, for plaintiff to review, in the presence of his counsel, photo arrays of all officers on duty on July 5, 2015 between 10 pm and midnight in the C-Block area of Clinton Correctional Facility.  See Dkts. No. 59-1 and 55-2.

29.     This review was scheduled to take place, at plaintiff's request, on a date and time that correlated to your already-planned visit with your client at Great Meadow on June 14, 2017. See Dkts. No. 59-1 and 55, pp. 2-3.

30.     As such, the photo array was scheduled to take place at 9 am on June 15.  Id.

31.     It was the intent of DOCCS to have the review conducted in the presence of OSI staff, in the same manner that the previous photo array was conducted with plaintiff.  The only difference would be that the review would take place in the presence of plaintiff's counsel.  Id.

32.     In light of the ongoing issues and difficulties in the discovery of this matter, I arranged to have the review videotaped, and a stenographer present, so that a full and complete record of the review would be available to the court, if necessary.  Id.

6

33.     It was only upon advising plaintiff's counsel of this that he told me that he would not be attending the photo review as scheduled.  Id.

34.     Following my telephone call with plaintiff's counsel on June 14, 2017, I documented the telephone call in an e-mail.  Dkt. No. 56-1.

35.     As that e-mail states, the photo review remained scheduled to take place at 9 am on June 15, 2017, as previously scheduled.  Id.

36.     As I explained to plaintiff's counsel in my letter to him, "As previously scheduled" meant "in your presence" (i.e., the presence of plaintiff's counsel).  Dkt. No. 59-1.

37.     I advised plaintiff's counsel that it was his choice to attend or not, and that if he chose not attend, the photo review would not take place and I would inform the court accordingly. Id.

38.     For plaintiff's counsel to file a document on the court's docket alleging that I "plan to go forward in questioning [your] client under oath with a stenographer and videographer present, and without the presence of counsel," was intentionally misleading and abusive.

39.     My only communication to plaintiff's counsel was that the review would not be canceled at the eleventh hour because of plaintiff's counsel's refusal to attend.

40.     At no point did I indicate to plaintiff's counsel that I intended to proceed with plaintiff's photo array viewing without plaintiff's counsel present.

41.     Therefore, there is absolutely no basis for plaintiff's counsel to be reimbursed for any money he claims to have paid to the Queensbury Hotel for an overnight stay on June 14, 2017 as it was his choice to cancel the photo array on that date and he was meeting with his client at

Great Meadow that day at any rate to prepare responses to defendants' Notices to Admit.  See Dkt.

No. 55, pp. 2-3.

> ### III.  Plaintiff's absurd and baseless accusation that AAG Buckley identified "Luke Nolan" as the "Correction Officer Nolan" in the caption and deliberately mislead the plaintiff throughout this litigation as to the identity of Officer Nolan.

42.     There is absolutely no basis for the claim by plaintiff's counsel that I identified Luke Nolan as the "Correction Officer Nolan" caption and that I misled plaintiff throughout this litigation.

43.     I had nothing to do with the determination that Darwin Nolan was an appropriate person to answer the Complaint as the "Correction Officer Nolan" named in this proceeding.

44.     I respectfully refer the court to the Declaration of Cassandra Savage, Office Assistant 1, at Clinton Correctional Facility ("Clinton") who explains that the determination that Darwin Nolan was the Correction Officer Nolan named in this litigation was made following internal inquiries within Clinton and I did not participate in that determination.

45.     The deposition of Darwin Nolan, who is now a Sergeant, took place in Albany on July 28, 2017.

46.     I met with Sgt. Nolan for the first time earlier that same day, July 28, 2017, to prepare for his deposition.

47.     In the course of preparing Sgt. Nolan for deposition, he showed me a photocopy of his personal calendar which indicated that, although he was employed as a Correction Officer at Clinton at the time in question, he was not present in the facility three weeks after the escape of

inmates Matt and Sweat which is when plaintiff claims Correction Officer Nolan wrongfully took and kept his identification document.

48.    This was the first time I became aware of evidence which demonstrated that Darwin Nolan could not have taken plaintiff's identification document as plaintiff claims.

49.    Sgt. Nolan testified accordingly at his deposition later that day.

50.    Following Sgt. Nolan's deposition, I asked plaintiff's counsel whether he would consider executing a Stipulation of Discontinuance as against Sgt. Nolan.

51.    Plaintiff's counsel has yet to accept my request, despite the fact that he acknowledges in the instant motion that Sgt. Nolan could not be the person who allegedly took his client's identification document.

52.    Furthermore, plaintiff's counsel has not sought to add Luke Nolan, or anyone else by the surname of Nolan, as a party to this proceeding.

**IV.    Defendants' good faith scheduling difficulties with the depositions of Superintendent Kirkpatrick and retired Superintendent Racettte**

53.    Plaintiff's claim that I, or any of the defendants, was uncooperative in scheduling the depositions of defendants Kirkpatrick and Racette is completely meritless.

54.    With regard to the scheduling of the deposition of defendant Steven Racette, retired Superintendent of Clinton, I respectfully refer the court to the e-mail correspondence attached hereto as **Exhibit G** which reflects the good faith efforts I undertook to schedule retired Supt. Racette's deposition at a mutually agreeable time and location.  <u>See</u> **Exhibit G.**

55.    At no point did I represent to plaintiff's counsel that retired Supt. Racette was simply unavailable for deposition because he was solely responsible for his father's health. See plaintiff's Memorandum of Law, Dkt. 81-1, p. 9.

56.    As reflected in my e-mails to plaintiff's counsel on July 27, 2017, retired Supt. Racette was available to appear in Albany for his deposition on August 1, 2017, but the deposition was postponed to October 5, 2017 at the request of plaintiff's counsel despite the fact that plaintiff's counsel was available on August 1, 2017, retired Supt. Racette had made special arrangements to make himself available on that date, and plaintiff's counsel had not objected to the date previously although I had e-mailed him about it as early as July 17th. see **Exhibit G** hereto.

57.    As indicated in my July 27, 2017 e-mail to plaintiff's counsel, we agreed to postpone the deposition to October 5th at the request of plaintiff's counsel on the basis that it was subject to cancellation and was to be conducted by telephone in Plattsburgh so that retired Supt. Racette would not have to travel far from his home and plaintiff's counsel would not have to travel up from Brooklyn. Id.

58.    As further indicated in my July 27, 2017 e-mail, the reason the deposition was postponed to October 5, 2017 under such conditions was because Supt. Racette's wife was ill and starting a course of treatment in October on an in-patient basis which may have required his presence.

59.    As expressly stated in my July 17, 2017 e-mail to plaintiff's counsel, "If Supt. Racette has to cancel the October 5th deposition date, you have agreed to try to work with me to

10

reschedule it and, if we cannot meet the discovery deadline, you will cooperate with me in making the necessary application to the court."

60.     As anticipated, October 5th became problematic for Supt. Racette and, on September 8, 2017, I e-mailed plaintiff's counsel to try to find a mutually agreeable alternative date, but, as demonstrated by the e-mail correspondence attached hereto as **Exhibit H**, notwithstanding our good faith efforts to resolve the matter, plaintiff's counsel resorted to the instant motion.  See Dkt. No. 81.

61.     After filing the instant motion, the court held a conference after which the court directed that, *inter alia*, the deposition of retired Supt. Racette would take place on October 25, 2017 in Plattsburgh, NY, with plaintiff's counsel present in Plattsburgh or present via video link up.  See Dkt. No. 82.

62.     Retired Supt. Racette's deposition took place on October 25, 2017 in accordance with the court's order.

63.     With regard to plaintiff's claims about the scheduling of the deposition of defendant Michael Kirkpatrick, current Superintendent of Clinton, I respectfully refer the court to Superintendent Kirkpatrick's Declaration, which explains that his deposition was cancelled on short notice on two occasions because of factors completely beyond his control.

64.     I also refer the court to the attached e-mail correspondence between me and plaintiff's counsel which I believes documents the good faith effort I made to schedule Superintendent Kirkpatrick's deposition at a mutually agreeable time and location.  See **Exhibit H** hereto.

11

65.     Supt. Kirkpatrick's deposition took place on October 24, 2017 in Albany, as directed by the Court.  <u>See</u> Dkt. No. 82.

### V.  Plaintiff's vague, unsubstantiated allegations that the defendants repeatedly obstructed discovery.

66.     Finally, there is absolutely no basis for the vague, unsubstantiated allegations about the defendants repeatedly obstructing discovery, as advanced in the "Conclusion" section of plaintiff's Memorandum of Law.  <u>See</u> Dkt. No. 81-1, pp. 11-12.

67.     Defendants' response to plaintiff's notices to admit were served within 30 days of receipt and plaintiff appears to concede that point.  <u>See</u>  **Exhibit E** hereto and plaintiff's Memorandum of Law, Dkt. No. 81-1, p. 12.

68.     Plaintiff's contention that defendants somehow acted in bad faith by failing to serve their responses to the notices to admit earlier than they did is ironic given that plaintiff failed to respond to Defendants' Notice to Admit within the required thirty (30) day time frame and had to be directed by the court to respond.  <u>See</u> Text Minute Entry, July 13, 2017.

### <u>CONCLUSION</u>

69.     Based on the foregoing, it is respectfully submitted that plaintiff's motion for sanctions is completely without merit and should be denied in its entirety.

Dated: November 9, 2017
       Albany, New York

                                        <u>s/ Denise P. Buckley</u>
                                        Denise P. Buckley
                                        Bar Roll No. 519278