**Corrections and Community Supervision**

$\bigcirc$ ̃or̃a̧o̧u̧v̇ ̇O
$\;\;\;\;\;\;\;\;$ ℬ u̇ k̃ e, ̇ ̃ʒ

**ANDREW M. CUOMO**
Governor

**ANTHONY J. ANNUCCI**
Acting Commissioner

September 2, 2016

Franklin Correctional Facility
Attn: IRC
62 Bare Hill Road
P.O. Box 10
Malone, NY 12953

RE: Service of Summons for Sergeant Darwin Nolan
$\;\;\;\;\;\;$ Burks v Stickney, et al
$\;\;\;\;\;\;$ 9:16-CV-0759

Please find enclosed a Service of Summons for Sergeant Darwin Nolan that was received at Clinton Correctional Facility on 8/24/2016 by a Process Server. Please have him sign a representation letter and send it to A.A.G. Denise Buckley as she is the Assistant Attorney assigned to this case.

Denise Buckley, A.A.G.
Litigation Bureau
NYS Office of the Attorney General
State Capitol
Albany, NY 12224

$\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;$ Sincerely,

$\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;$ Cassandra Savage, OA1
$\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;\;$ Legal Office

Case 9:16-cv-00759-FJS-DEP Document 3 Filed 06/27/16 Page 1 of 2

AO 440 (Rev. 12/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of New York

| MATTIEU BURKS | ) |
| --- | --- |
| _____ | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 9:16-CV-759 (FJS/DEP) |
| STICKNEY; NOLAN; SMITH; PEPPER; CROSS; RACHETTE; KIRKPATRICK | ) |
| _____ | ) |
| *Defendant* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* CORRECTION OFFICER CHAD STICKNEY; CORRECTION OFFICER NOLAN; CORRECTION OFFICER SMITH; CORRECTION OFFICER PEPPER; SERGEANT J. CROSS; SUPERINTENDENT STEVEN RACETTE, SUPERINTENDENT MICHAEL KIRKPATRICK
Clinton Correctional Facility
Route 374, Cook Street
Dannemora New York 12929-2000

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: Leo Glickman, Esq.
Stoll, Glickman & Bellina LLP
475 Atlentic Avenue, 3rd Fl
Brooklyn, NY 11217

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Date: 06/27/2016

Clerk of Court

s/ A. Hudson
(BY) DEPUTY CLERK

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X

MATTIEU BURKS,

|  |  |
|---|---|
| Plaintiff, | COMPLAINT AND JURY DEMAND |
| -against- |  |
| CORRECTION OFFICER CHAD STICKNEY; CORRECTION OFFICER NOLAN; CORRECTION OFFICER SMITH; CORRECTION OFFICER PEPPER; SERGEANT J. CROSS; JOHN DOE "E" BLOCK SERGEANT; SUPERINTENDENT STEVEN RACETTE, SUPERINTENDENT MICHAEL KIRKPATRICK, JOHN DOE SUPERVISOR IN CHARGE OF SECURITY #1, JOHN DOE CORRECTION OFFICERS ##1-25, | Docket No.   9:16-cv-759 (FJS/DEP)  ECF CASE |
| Defendants. |  |

----------------------------------------------------------------- X

## STATE OF DENIAL

1. The New York State Correctional Association ("NYSCA") monitors and reports on the state of New York's correctional facilities and is mandated by statute to monitor certain correctional facilities in the State. All state correctional facilities are mandated to allow NYSCA representatives to visit said facilities at their pleasure.

2. In October, 2014 NYSCA reported that reports of physical abuse by correction officers against inmates was extremely high inside Clinton Correctional Facility.[1]

3. In that same report, NYSCA reported that racial harassment by correction officers against inmates was also extremely high.

4. NYSCA also noted that though about 50% of the inmate population was black,

---

[1] The report can be found at http://www.correctionalassociation.org/wp-content/uploads/2015/03/Clinton-Correctional-Facility-Final-Draft-2.pdf

there were zero black correction officers – not one out of almost 1,000 prison guards.

5.  On September 4, 2015, NYCSA published "10 things you need to know about brutality and abuse at Clinton Correctional Facility"[2] in connection with the escape of Richard Matt and David Sweat. Their list is as follows:

> a.  Officers are Suffocating People During Interrogations
>
> b.  There was Severe and Widespread Brutality in the Escape's Aftermath
>
> c.  People were Targeted Post-Escape for Reasons Unrelated to the Escape
>
> d.  There has been Longstanding and Ongoing Brutality at Clinton
>
> e.  After being Assaulted, People are Sent to Solitary Confinement
>
> f.  There is a Lack of Proper Documentation and Accountability for Abuses
>
> g.  COs are Denying People the Most Basic Rights and Living Conditions
>
> h.  Racism and Dehumanization are at the Core of All of the Abuses
>
> i.  People at Clinton have been Held in Solitary Confinement for Decades
>
> j.  Not Just Clinton: Beating, Maiming, and Torture Occurs Across NY Prisons

6.  Despite the evidence and pleas from the state's legislatively mandated correctional monitoring organization, On September 15, 2015 New York's highest official, Governor Andrew Cuomo, denied that violence by prison guards was a widespread problem and added, as if to invite violence as a way to earn "respect" that "they [correction officers] have to make sure they get a certain amount of respect in the job, otherwise they get hurt"

7.  In a further demonstration of New York's state of denial, the Governor stated while Richard Matt and David Sweat were still missing: "In a prison you have 3 basic groups of employees, you have the correction officers, the guards, you then have civilian

---

employees who work at the prison, and then you have these private contractors primarily
construction contractors who come in and out who've been working on the facility.
We're focusing on the contractors and the civilian employees, I would be shocked if a
correction official if a guard was actually involved."

8. Indeed, in a televised spectacle of the Governor touring the block where the
escape took place, keeping the focus away from prison officials, he said to an inmate in a
nearby cell that the noise of the escape must have kept him awake. The inmate, Patrick
Alexander, reported that Governor Cuomo gave him his best "tough guy" look.[3]

9. Later, Patrick Alexander had a plastic bag placed over his head while he was
beaten by guards. They threatened to waterboard him.

10. Of course, it turned out that one guard, Correction Officer Gene Palmer, has been
arrested for being intimately involved in the escape.

11. Further, twelve other prison officials (so far), including nine guards and three
prison executives were placed on modified duty in connection with investigations of the
escape.

12. Governor Cuomo's unjustified, overly broad and unsubtle public support of
Clinton correction officers assured them that the torture, physical abuse and racial
harassment they inflicted on inmates in the aftermath of the escape would go unpunished.

13. The Governor's dismissive attitude encouraged and emboldened the chain of
command below him to engage in brutality and misconduct, and was a contributing cause
of the injury to the plaintiff and numerous other inmates.

14. Furthermore, upon information and belief no criminal charges have been brought

---

[3] http://www.nytimes.com/2015/08/12/nyregion/after-2-killers-fled-new-york-prisoners-say-beatings-were-next.html

3

by the Clinton County District Attorney's Office for the criminal brutality and torture
perpetrated by correction officers in an attempt to cover up officer culpability in the
escape, and have only prosecuted one correction officer in connection with the criminal
behavior that enables the escape – the one caught red handed – Gene Palmer.

15. On June 5, 2016, the State Inspector General released a report on security
breakdowns that lead to the escape.[4] At the outset, it notes that the investigation
"identified a number of DOCCS employees who committed criminal acts..."

16. It further noted that executive staff, uniformed and civilian employees at Clinton
C.F. gave "not credible" statements under oath in the course of their investigation. Yet,
upon information and belief, no one has been prosecuted for perjury to date.

17. The permissive attitude about correction officer misconduct by prosecuting
authorities, including but not limited to the Clinton County District Attorney's Office,
provides the opportunity and enables correction officers to engage in illegal acts of
brutality and perjury to cover up misconduct, causing plaintiff and other inmates injury.

## PRELIMINARY STATEMENT

18. This is a civil rights action in which plaintiff seeks relief for the violation of his
rights by correction officers and other employees and/or contractors in their personal
capacities under the Eighth and Fourteenth Amendments secured by 42 U.S.C. §1983.
Plaintiff does not assert claims against the state in this action, as he is aware that caselaw
interpreting the 11th Amendment, though not the language of the 11th Amendment,
precludes actions against the state and its employees in their official capacity.

19. Nevertheless, the Governor's words are pled because they are evidence of

_____
[4] The Report can be found here:
https://ig.ny.gov/sites/default/files/pdfs/DOCCS%20Clinton%20Report%20FINAL_1.pdf

4

defendants' motive and opportunity to commit such acts.

20. The claim arises from a series of incidents in which defendant correction officials engaged in a pattern of harassment, intimidation, and assault, causing plaintiff to suffer injury while in the custody of the New York State Department of Correctional Services ("DOCCS") at Clinton Correctional Facility.

21. Plaintiff seeks monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION AND VENUE

22. This action is brought pursuant to 28 USC §1331 and 42 USC §§1983 and 1988.

23. Venue is laid within the United States District Court for the Northern District of New York in that a substantial part of the events giving rise to the claim occurred within the boundaries of the Northern District of New York.

## PARTIES

24. Plaintiff Mattieu Burks was a prisoner in the custody of the DOCCS at Clinton Correctional Facility at all relevant times herein. He was serving a maximum three and a half year sentence on a narcotics related charge.  He resided in Rennselear County, NY, prior to his incarceration.

25. Correction Officer Chad Stickney, Correction Officer Nolan, Correction Officer Smith, Correction Officer Pepper, Sergeant J. Cross, and John Doe Officers and Supervisors, upon information and belief, were employees of the DOCCS working as correction officers at Clinton C.F. at all times here relevant and were acting in the capacity of agents, servants and employees of the State of New York and acting under

5

color of state law. These defendants participated in, facilitated and/or witnesses and failed to intervene in the harassment, threats, cover-ups and assaults of plaintiff.

## FACTUAL ALLEGATIONS
### The Pattern of Abuse Prior to the Escape

26. On February 26, 2015, plaintiff was moved from Downstate C.F. to Clinton C.F.

27. Plaintiff was routinely subjected to verbal harassment related to his race by white correction officers, including but not limited to Correction Officer Chad Stickney, also known as "Captain America".

28. Plaintiff had a framed photograph of his girlfriend, who is white, in his cell. This fact was sometimes the subject of the racial harassment, which occurred on numerous occasions in March and April, 2015.

29. In April, 2015 C.O. Stickney and other officers had apparently observed him having a social conversation with a white female correction officer. C.O Stickney, in the presence of other officers, said to him in sum and substance that "you don't know your place" and that he "needs to be educated". He then said that he was "just another nigger, we will kill you, do the paperwork and no one will care about another dead nigger."

30. C.O. Stickney and the other officers then took him out of his cell and physically assaulted him by kicking him in the testicles and otherwise roughing him up. He was then put back in his cell where he was assaulted further by John Doe Officers.

31. On other occasions between March and May, 2015, plaintiff was verbally abused, his life threatened, and assaulted by correction officers, including C.O. Stickney.

6

## Plaintiff's Knowledge of Escapee Richard Matt and His Relationships with Correction Officers and Staff

32. Plaintiff's knowledge and familiarity with Richard Matt and his associates such as Correction Officer Gene Palmer (facing felony charges) and prison employee Joyce Mitchell (convicted) placed him in great jeopardy after the escape. For example, he knew that Richard Matt was able to have narcotics such as cocaine smuggled into the prison because of his favorable relationships with correction officials. Matt did in fact smuggle narcotics into the prison.

33. Plaintiff worked in "Tailor Shop 1" with Richard Matt. Joyce Mitchell worked there. Correction Officer Palmer did not work there, but would rove the facility. He often stopped at Tailor Shop 1 and clearly had a close relationship with Richard Matt. They would often go somewhere private to talk. Correction officials believed and Plaintiff in fact did have knowledge of the relationships that Richard Matt had with Officer Palmer, Joyce Mitchell and others. Plaintiff knew, for example, that because of his relationships with officers and civilian employees, Matt was engaged in drug dealing inside the facility with the knowledge and assistance of correction employees.

34. Plaintiff also knew, for example, that Matt had sex with Mitchell, and that Palmer would often do favors for Matt and other inmates. Correction officers knew that he possessed such information because of the close quarters that inmates, civilian employees and correction officers worked in Tailor Shop 1.

### The Morning After the Escape

35. Plaintiff, like the other inmates in his block and, presumably, inmates throughout Clinton C.F. were locked into their cells the day after the escape. As this was not typical, plaintiff and other inmates believed that an incident had occurred but they were not aware

7

of the nature or details.

36. Some inmates, including plaintiff, had televisions in their cells. Plaintiff and other inmates with television sets were watching the French Open Women's Tennis final between Serena Williams and Lucie Safarova.

37. During the match, a news scroll appeared at the bottom of the screen reporting that two inmates had escaped Clinton C.F. Inmates began yelling the news to one another throughout the cell block.

38. Later, news of the "Have a Nice Day" note left behind by Matt and Sweat leaked to the inmates. Correction officers grew progressively angry and hostile as inmates would say "have a nice day" to them as they walked down corridors by cells.

39. Inmates remained locked in their cells for days after the escape, increasing the tension in plaintiff's block and presumably throughout the prison.

### The Post-Escape Terrorizing

40. Within a few days of the escape, plaintiff was removed from his housing area and taken to the laundry room. He was questioned by investigators about Richard Matt. He was asked a series of seemingly random questions that would not seem to bear on the escape, such as whether he smokes a lot. They asked no questions about correction officers or employees. The investigators and the correction officers nearby were angry with Plaintiff because they perceived he was holding back in answering questions. He returned to his cell without incident.

41. For at least one week, he and the other inmates in his housing unit were locked into cells without access to showers. Inmates were constantly talking about what was happening around the prison.

42. Two to three weeks after the escape, the inmate population, including plaintiff, found out that C.O. Gene Palmer was arrested in connection with the escape.

43. Rumors were rampant that "A" block inmates, where "honor block" inmates were housed, were being beaten up by correction officers to stop them from talking to investigators about correction officer complicity. Richard Matt and David Sweat were honor block inmates.

44. Plaintiff's fears incited by the rumors turned out to be founded, as was widely reported in press accounts.

45. Some of the focus of questioning by investigators turned from the escapees to correction officers.

46. Correction officers were repeatedly threatening and harassing him, telling him to "hold it down" and insisting that he knew nothing about correction officer complicity. Fearing for his safety, plaintiff refused to divulge information to investigators.

47. About three weeks after the escape, he was stopped in a corridor by Correction Officer Nolan who demanded plaintiff's identification. Plaintiff handed him the identification and Nolan told nearby correction officers that he had "slipped through the cracks."

48. Correction Officer Nolan kept plaintiff's identification. An inmate cannot move within the facility without identification. Nolan wrote him a ticket and he was placed in punitive "keep-lock" for two days. However, the ticket was reduced to a minor infraction and he was released back to his regular housing.

49. When he returned he would go to his daily programs. Each day, when he would return to his cell it was vandalized. His property was damaged and broken and his cell

9

was left in total disarray.

50. Prison regulations require that when a cell search takes place the inmate must be present and that a receipt is filled out by an officer and signed. When he complained about the searches and noted that the receipts were never left, officers began leaving the required receipt, but leaving the name of the officer blank.

51. An inmate had informed him that correction officers were coming into his cell and vandalizing it.

52. Correction officers stole his boots from his cell, preventing him from working at his program.

53. On the night of July 5, 2015, plaintiff was lying awake in his bed when his cell door suddenly popped open. The control room correction officer, defendant John Doe, is the only person who would have the ability to open the cell.

54. One John Doe correction officer slammed him around the cell, and striking him. He was punched in the face. Another John Doe officer had come into the cell. He told the first officer who was assaulting him to not hit him in the face, saying "the head belongs to the state, but the body belongs to us."

55. The officers continued the assault for a period of time, then left the cell and the control officer locked him back in.

56. Though plaintiff's face was obviously injured, no correction officer that night or the next day sought help for him.

57. Plaintiff put in for sick call, and went to the clinic on July 7. He told the nurse what had happened. Moments later, Sergeant Cross arrived and told plaintiff not to say anything about it involving correction officers, and he would see what he could do to help

his situation.

58. However, the nurse had already taken down what he said and stated that she must now report the alleged incident. Plaintiff told the nurse that he was dizzy. The nurse responded that if it is noted that he is dizzy, he will have to be sent outside the facility and that "it could be worse" for him. Upon information and belief, the nurse's name is Robert Fitzgerald. Plaintiff withdrew that he was dizzy.

59. The "E" block sergeant asked him about who did this to him. Plaintiff replied that he did not want to get any correction officers involved. The "E" block sergeant then replied "no, not which correction officer, which inmate?"

60. At this point, plaintiff determined that refusing to speak about what was happening with correction officers, both before and after the escape, was not helping him stay safe, and at that point determined to speak to investigators about everything he knew.

61. Plaintiff declared that he would say truthfully what happened to him. Nurse Fitzgerald and Sergeant Cross left the room, and the "E" block sergeant and another correction officer who was present handcuffed him and escorted him to a cell within the "E" block psychiatric unit. As this unit was designed for long term keep-lock, being lodged there was punitive. The escorting John Doe correction officer was telling other officers and inmates that plaintiff was one of "Joyce Mitchell's fuck boys". They were also discussing the incident involving the female correction officer in which he was assaulted. He was locked into his new cell in the psychiatric unit.

62. Correction Officer Stickney and another correction came later with plaintiff's property. They asked him in an intimidating and aggressive manner "who are you going to say did this to you". Intimidated, plaintiff replied that they knew correction officers

11

had assaulted him, but that he would hold it down. He was given his property.

63. On the same day plaintiff reported to the nurse that he had received a ticket and infraction for fighting and for failing to report his own medical condition. Plaintiff fought the ticket and was found guilty for fighting but not guilty for failure to report. He was sentenced to 45 days in keep-lock. Being in keep-lock means you are locked in your cell 23 hours a day.

64. Plaintiff appealed the fighting conviction, and it was overturned. At that moment he should have been let out of his punitive custody. Instead, even though correction officers holding him in keep-lock knew that his appeal was successful and that he must be released, they continued to hold him in keep-lock.

65. While illegally being held in punitive custody, John Doe correction officials harassed him by shutting off the water and electricity in his cell. He was forced to urinate in the sink. An inmate porter would occasionally bring him a bit of water to rinse the urination from the sink.

66. Keep-lock inmates are entitled to one hour outside their cell and time to make phone calls. Plaintiff was denied even these meager required privileges.

67. Correction Officer Stickney approached another inmate named Jeremy Simmons in the cell block where plaintiff was being held in keep-lock, and told him to "handle" Plaintiff. Simmons understood this to mean that he should assault plaintiff. CO Stickney further offered that if he would do him that favor, he would in turn take care of Simmons. Simmons told him he would think about it but had no intention to assault plaintiff.

68. Porters also told plaintiff that Correction Officer Smith and Correction Officer Pepper would tell the porters not to bring plaintiff food. However, thankfully, porters

12

would sneak food to plaintiff against the commands of these correction officers.

69. On one occasion while plaintiff was in keep-lock, Correction Officer Smith walked by plaintiff's cell and punched him in the face through the bars for no legitimate purpose, exacerbating the pain he still felt from the assault.

70. Plaintiff gave a note to another inmate asking him to call his grandmother and tell her to call the prison to complain about what was happening. After a few days, the tension and harassment began to abate. After being without plumbing and electricity for over four days, it was turned back on.

71. In June and July, 2015, plaintiff wrote numerous grievances and letters to the appropriate authorities, including but not limited to the defendant Superintendents of the prison. None of the grievances or letters were heeded, which in part caused the plaintiff to be assaulted twice and continue the harassment against him.

72. Defendant Superintendents Kirkpatrick and Racette, as well as other John Doe Supervisors knew of the escape of Matt and Sweat and the subsequent lock-down, investigations, and the general environment of the prison, as well as the particular harassment and assaults correction officers subjected plaintiff to because of the investigations and his particular knowledge of Richard Matt and Joyce Mitchell. Despite such knowledge, Superintendents Kirkpatrick and Racette took no steps to protect plaintiff from undue violence by their staff.

73. In September, 2015, plaintiff was moved by the Department of Corrections to Attica C.F.

74. Plaintiff exhausted all administrative remedies available to him for each incident.

75. Plaintiff was seriously injured as a result of defendants' actions.

13

## DAMAGES

76.  As a direct and proximate result of the acts of defendants, plaintiff suffered the
following injuries and damages:

   a. Violation of his right to Due Process of Law under the Fourteenth
      Amendment to the United States Constitution;

   b. Violation of his right under the Eighth Amendment to be free from cruel and
      unusual punishment;

   c. Physical pain and suffering; and

   d. Emotional trauma and suffering, including fear, emotional distress,
      frustration, fright, horror, grief, depression, loss of sleep, and increased
      levels of anxiety.

### FIRST CAUSE OF ACTION – ASSAULTS IN APRIL, 2015
(Violation of Plaintiff's Eighth Amendment Right under the Constitution of the
United States to be free from Cruel and Unusual Punishment)

77.  The above paragraphs are here incorporated by reference.

78.  Defendant Correction Officer Stickney and other John Doe Defendants acted
under color of law and conspired to deprive plaintiff of his civil, constitutional and
statutory rights to be free from cruel and unusual punishment under the Eighth
Amendment when defendants harassed, assaulted, and facilitated assaults on him by
themselves and other correction officers.

79.  Defendant Stickney and the John Doe defendants acted with malicious intent,
purposefulness and/or deliberate indifference and are liable to plaintiff under 42 U.S.C.
§1983.

80.  Plaintiff was physically injured and has been damaged by defendants' wrongful

14

acts.

## SECOND CAUSE OF ACTION – ASSAULT ON JULY 5, 2015
(Violation of Plaintiff's Eighth Amendment Right under the Constitution of the United
States to be free from Cruel and Unusual Punishment)

81. The above paragraphs are here incorporated by reference.

82. John Doe defendants acted under color of law and conspired to deprive plaintiff

of his civil, constitutional and statutory right to be free from cruel and unusual

punishment under the Eighth Amendment when defendants harassed, assaulted, and

facilitated assaults on him by themselves and other correction officers.

83. The John Doe defendants acted with malicious intent, purposefulness and/or

deliberate indifference and are liable to plaintiff under 42 U.S.C. §1983.

84. Plaintiff was physically injured and has been damaged by defendants' wrongful

acts.

## THIRD CAUSE OF ACTION – ASSAULT IN KEEP-LOCK
## AFTER THE JULY 5, 2015 ASSAULT
(Violation of Plaintiff's Eighth Amendment Right under the Constitution of the United
States to be free from Cruel and Unusual Punishment)

85. The above paragraphs are here incorporated by reference.

86. Correction Officer Smith and Correction Officer Pepper acted under color of law

and conspired to deprive plaintiff of his civil, constitutional and statutory right to be free

from cruel and unusual punishment under the Eighth Amendment when defendants

harassed, assaulted, and facilitated assaults on him by themselves and other correction

officers.

87. Correction Officers Smith and Pepper acted with malicious intent, purposefulness

and/or deliberate indifference and are liable to plaintiff under 42 U.S.C. §1983.

88. Plaintiff was physically injured and has been damaged by defendants' wrongful

acts.

## FOURTH CAUSE OF ACTION – DENIAL OF WATER, ELECTRICITY, AND EVEN THE MEAGER PRIVILEGES IN KEEP-LOCK, THE GUARDS REFUSAL TO RELEASE PLAINTIFF FROM KEEP LOCK, AND THEIR ATTEMPTS TO DENY HIM FOOD AND WATER IS "REPUGNANT TO THE CONSCIENCE OF MANKIND"

(Violation of Plaintiff's Eighth Amendment Right under the Constitution of the United States to be free from Cruel and Unusual Punishment and/or his Fourteenth Amendment Right to be Free from Violations of Due Process of Law)

89. The above paragraphs are here incorporated by reference.

90. John Doe Correction Officers acted under color of law and conspired to deprive plaintiff of his civil, constitutional and statutory right to be free from cruel and unusual punishment under the Eighth Amendment and/or due process of law under the Fourteenth Amendment when defendants harassed plaintiff by denying him the few privileges available to him by prison regulations and turning off his water and electricity and attempting to deny him food and refusing to release him from keep-lock even after his infraction was overturned.

91. Correction Officers Smith and Pepper acted with malicious intent, purposefulness and/or deliberate indifference and are liable to plaintiff under 42 U.S.C. §1983.

92. Plaintiff was physically injured and has been damaged by defendants' wrongful acts.

## FIFTH CAUSE OF ACTION – SUPERVISORY LIABILITY

(Violation of Plaintiff's Eighth Amendment Right under the Constitution of the United States to be free from Cruel and Unusual Punishment)

93. The above paragraphs are here incorporated by reference.

16

94.   Superintendents Racette and Kirkpatrick, and John Doe Supervisor Responsible for Security, are liable for the injuries suffered by plaintiff as a result of the conduct of their agents, employees, and servants.

95.   Superintendents Racette and Kirkpatrick, and John Doe Supervisor Responsible for Security should have been aware of the propensity and intentions of their employees, servants and agents to engage in constitutional violations against plaintiff and other inmates who knew or had knowledge of the people involved in the escape of David Sweat and Richard Matt, and further, should have been aware and were likely in fact aware of the specific threats confronting plaintiff, described above, but failed to take corrective action.

96.   As described above, plaintiff submitted numerous grievances and sent letters to the Superintendent and other officials that his safety and security were in serious jeopardy because of threats and harassment by Correction Officers in connection with the investigations of the escape. The supervisory defendants were aware of plaintiff's realistic and plausible concerns, but again, failed to take any corrective action.

97.   Dozens of inmates who were in the honor block or who worked in the tailor shop were brutally interrogated, beaten, and tortured by prison guards in an attempt at retribution and cover up.[5]  The Supervisory defendants should have known and extremely likely did know of such activities.  If they did not know it could only be attributed to wilfull ignorance. Despite the obvious nature of what was happening, the Supervisory defendants took no corrective action.

---

[5] http://www.nytimes.com/2015/08/12/nyregion/after-2-killers-fled-new-york-prisoners-say-beatings-were-next.html

17

98. Furthermore, brutal, unconstitutional correction practices had taken place for years at Clinton C.F., as documented by the New York State Correctional Association. It was hardly unbelievable that under the extraordinary circumstances of the escape and the implicit public encouragement by Governor Cuomo himself, that such brutality was occurring against inmates, especially those with knowledge of the persons and relations between the escapees, prison workers, and correction officers. Nevertheless, no corrective actions were taken.

99. Corrective action by the Supervisory defendants would have prevented the assault on plaintiff. He was not one of the first to be brutalized by correction officers, as evidenced by plaintiff's understanding that acts of brutality were taking place against honor block inmates who worked in the tailor shop and further evidenced by defendant Officer Nolan stating that plaintiff had "slipped through the cracks."

100. The Supervisory defendants knew that the select inmates like plaintiff who worked in Tailor Shop 1 were particularly vulnerable under the circumstances of the escape aftermath. They knew by his letters and grievances that he was targeted. Nevertheless, they failed to take any corrective action.

101. The above described failure to supervise demonstrated a deliberately indifferent attitude towards the inmates who suffer constitutional violations at the hands of correctional officer subordinate to the supervisory defendants, and was the cause of the violation of plaintiff's rights here alleged.

102. The Supervisory defendants have damaged plaintiff by their failure to properly supervise, discipline, review, remove or correct the illegal and improper acts of their subordinate officers.

18

103.     Plaintiff has been damaged as a result of the wrongful, grossly negligent and illegal acts of the supervisory defendants.

WHEREFORE, plaintiff demands judgment against the defendants, jointly and severally, as follows:

A.     In favor of plaintiff in an amount to be determined by a jury for each of plaintiff's causes of action;

B.     Awarding plaintiff punitive damages in an amount to be determined by a jury;

C.     Awarding plaintiff reasonable attorneys' fees, costs and disbursements of this action; and

D.     Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:     June 27, 2016
           Brooklyn, New York                    Respectfully yours,

                                                 /S/

TO:   Defendants, Clinton Correctional           By: Leo Glickman
Facility                                         Stoll, Glickman & Bellina, LLP
                                                 Attorneys for Plaintiff
                                                 475 Atlantic Avenue 3rd Floor
                                                 Brooklyn, NY 11217
                                                 (718) 852-3710
                                                 (718) 852-3586
                                                 lglickman@stollglickman.com

19

### UNITED STATES DISTRICT COURT
### FOR THE
### NORTHERN DISTRICT OF NEW YORK

# NOTICE

### THE ATTACHED FILING ORDER IS A TIME SENSITIVE DOCUMENT

This filing order is to be served on all parties to the action along with the complaint or petition for removal within **sixty (60) days** of filing this action.

The attached Civil Case Management Plan must be completed and filed with the clerk no later than **seven (7) days** prior to the conference date referenced below.

CONFERENCE DATE/TIME: **September 29, 2016, at 11:00 AM**

CONFERENCE LOCATION: **Syracuse, New York**

BEFORE MAGISTRATE JUDGE: **DAVID E. PEEBLES**

CONTENTS:

- ○ General Order #25 (Filing Order)

- ○ Case Management Plan

- ○ Case Assignment/Motion Schedules and Filing Locations

- ○ Consent Form to Proceed before U.S. Magistrate Judge

**NOTE: ALL CIVIL ACTIONS SHALL BE REFERRED INTO THE NORTHERN DISTRICT'S PILOT MANDATORY MEDIATION PROGRAM EXCEPT THOSE CASES THAT HAVE BEEN DESIGNATED AS EXEMPT UNDER SECTION 2.1 (A) OF GENERAL ORDER #47.** If the ADR track below has been checked, this case will be referred into the Mandatory Mediation Program. Counsel are directed to review the Pilot Mandatory Mediation Plan prior to the Rule 16 Conference. Please refer to General Order #47 - Pilot Mandatory Mediation Program which is available on the Court's website at www.nynd.uscourts.gov.

---

                    X   Conventional Track

---

## UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN DISTRICT OF NEW YORK

### GENERAL ORDER #25

### I. PURPOSE

It is the policy of this court to help litigants resolve their civil disputes in a just, timely and cost-effective manner. To that end, this court has adopted an Expense and Delay Reduction Plan in accordance with the Civil Justice Reform Act of 1990. This will tailor the level of individualized case management needs to such criteria as case complexity, and the amount of time reasonably needed to prepare the case for trial.

### II. SCOPE

This order applies to all civil cases filed in this court except: multi-district litigation, case remanded from the appellate court, reinstated and reopened cases, and cases in the following Nature of Suit (NOS) categories indicated on the JS44 Civil Cover Sheet: Prisoner Petitioners (463,510-560), Forfeiture/Penalty (625,690), Bankruptcy Appeals (422,423), Social Security Appeals (861-865), Contracts (only NOS 150,151,152,153, and other contract actions which involve the collection of debts owed to the United States), and Real Property (only NOS 220).

\*Note - When the Court deems it appropriate, Rule 16 Scheduling Conferences will be held in the above excepted actions.

The Court has adopted the guidelines of civility as outlined in the New York State Bar Association Guidelines on Civility in Litigation, a copy of which is available on the courts web-site at www.nynd.uscourts.gov.

### III. SERVICE

A. **Timing:** When serving a Complaint or Notice of Removal, the filing party shall serve on all other parties a copy of this General Order and the attached materials. Service of process should be completed within Sixty (60) days from the initial filing date. This expedited service is necessary to fulfill the dictates of the Civil Justice Reform Act Expense and Delay Reduction Plan of this court and to ensure adequate time for pretrial discovery and motion practice. However, in no event shall service of process be completed after the time specified in Fed. R. Civ. P. 4, or any other Rule or Statute which may govern service of process in a given action.

B. **Filing Proof(s) of Service:** Proof(s) of service of process are to be filed with the clerk's office no later than five (5) days after service of the complaint or notice of removal with a copy of this General Order.

C. **Non Compliance with Sixty (60) Day Service Requirement:** In the event that the filing party cannot comply with the Sixty (60) day service requirement, that party shall immediately notify the assigned Magistrate Judge and request an adjournment of the initial Rule 16 case management conference date contained in the attached Civil Case Management Plan.

If an adjournment of the conference date is granted, it shall be the responsibility of the filing party to notify all parties to the action of the new date, time and location for the case management conference. Proof of service of such notice shall then be immediately filed with the clerk's office.

### IV. ADDITIONAL PARTIES

Any party who, after the filing of the original complaint or notice of removal, causes a new party to be joined in the action shall promptly serve on that new party a copy of General Order 25 along with any additional Uniform Pretrial Scheduling Order that has been entered by the court.

## V. REMOVED CASES

In cases removed to this court from a state court, the removing defendant(s) shall serve on the plaintiff(s) and all other parties, at the time of service of the notice of removal, a copy of this General Order with the attached materials. The filing of a motion for remand does not relieve the moving party of any obligation under this General Order unless the assigned judge or magistrate judge specifically grants such relief.

## VI. TRANSFERRED CASES

The clerk shall serve a copy of this General Order on all parties that have appeared in any action transferred to this district. The clerk shall set a return date for the initial Rule 16 case management conference on the form attached to the General Order. It shall be the obligation of the plaintiff or plaintiff's counsel to arrange for completion of the attached Case Management Plan and to file the Plan with the clerk and to serve this General Order upon any party who had not appeared in the action at the time of transfer.

Attorneys appearing in transferred cases are reminded of their obligation to be properly admitted to this district in accordance with Local Rule 83.1. Attorneys must also be registered for electronic filing. Refer to Section XII of this General Order.

## VII. MATERIALS INCLUDED WITH THIS GENERAL ORDER PACKET

A)  Notice of Initial Rule 16 Case Management Conference
B)  Civil Case Management Plan
C)  Case Assignment Form
D)  Notice and Consent Form to Exercise of Jurisdiction by a United States Magistrate Judge

## VIII. ADR PROGRAMS

It is the mission of this court to do everything it can to help parties resolve their disputes as fairly, quickly, and efficiently as possible. The Court has adopted a Pilot Mandatory Mediation Program - see General Order #47 available on the Court's website. All civil cases that are not exempt under General Order #47 and are filed after January 1, 2014, as well as all cases where a Rule 16 Conference is scheduled after January 1, 2014, will be placed into the Pilot Mandatory Mediation Program. The Court may also refer other pending cases into the Pilot Mandatory Mediation Program. During the pendency of this Pilot Mandatory Mediation Program, the Arbitration (L.R. 83.7), Mediation (L.R. 83.11-1), and Early Neutral Evaluation (L.R. 83.12-1) Programs will be suspended. The Local Rules for mediation will apply only to *Pro Se* cases that proceed through the Assisted Mediation Program (L.R. 83.8). The parties are directed to review the Pilot Mandatory Mediation Plan requirements prior to the Rule 16 Pretrial Conference. At the Rule 16 Pretrial Conference, the assigned Magistrate Judge will set a deadline for the completion of Mediation under General Order #47. The referral of a case to the Pilot Mandatory Mediation Program does not delay or defer other dates established in the Scheduling Order and has no effect on the scheduled progress of the case toward trial.

### A) Settlement Conferences:
The parties are advised that the court will honor a request for a settlement conference at any stage of the proceeding. A representative of the parties with the authority to bind the parties must be present with counsel or available by telephone at any settlement conference.

### B) Consent to Jury or Court Trial Before A United States Magistrate Judge:
By written stipulation, the parties to any civil action may elect to have a magistrate judge (instead of the assigned Article III judge) conduct all proceedings in any civil case, including presiding over a jury or bench trial. A trial before a magistrate judge is governed by the same procedural and evidentiary rules as trial before a district judge. The right to appeal is automatically preserved to the United States Court of Appeals under the same standards which govern appeals from an Article III judge. Parties often consent to resolution of their civil disputes by magistrate judge bench or jury trial because magistrate judges have less crowded calendars.

## IX. DISCOVERY

**A. Discovery Motions:** Prior to bringing a discovery dispute to a Magistrate Judge, the parties must confer in good faith in accordance with the provisions of Local Rule 7.1(d). In addition, no non-dispositive or discovery motions should be presented to the Court unless authorized by the Magistrate Judge after communication with the Magistrate Judges' chambers.

**B. Filing Discovery:** Parties are directed not to file discovery material unless it is being filed in accordance with Local Rule 26.2.

For additional information on local requirements related to depositions and discovery please refer to Section V. of the Local Rules of this court.

## X. MOTIONS

**A. Motion Return Dates:** Please refer to the attached case assignment form for a complete listing of the motion return dates for the judges and magistrate judges of this court.

For additional information on local requirements related to motion practice, please refer to Local Rule 7.1.

## XI. CASE MANAGEMENT CONFERENCE

Except in actions exempted under Section II of this order, or when otherwise ordered by the court, the parties shall, as soon as practicable, but no later than twenty-one (21) days before the Rule 16 conference, confer to jointly address each item contained in the attached Case Management Plan packet. The completed plan is to be filed with the clerk not later than seven (7) days prior to the conference date. The NOTICE setting the date, time, and location for the initial Rule 16 conference with the court is included as part of this filing order. Mandatory disclosures under Fed. R. Civ. P. 26(a) shall be exchanged at least seven(7) days prior to the conference date, unless the parties have obtained prior approval from the assigned Magistrate Judge to extend that deadline. The Civil Justice Reform Act Plan of this court requires the court to set ""'early, firm'"' trial dates, such that the trial is scheduled to occur within eighteen(18) months after the filing of the complaint, unless a judicial officer certifies that (I) the demands of the case and its complexity make such a trial date incompatible with serving the ends of justice; or (II) the trial cannot reasonably be held within such time because of the complexity of the case or the number or complexity of pending criminal cases.

## XII. ELECTRONIC FILING

As of January 1, 2004, all documents submitted for filing by attorneys admitted to practice in the Northern District of New York shall be filed electronically using the CM/ECF system. Refer to General Order #22 for procedures for filing documents electronically. Attorneys must be registered for both PACER and CM/ECF. Consult the CM/ECF section of the courts web-site at www.nynd.uscourts.gov for PACER registration, CM/ECF registration, CM/ECF training dates, and General Order #22.

### REVISED GENERAL ORDER #25
### Dated: January 1, 2016

s/
_____
### Hon. Glenn T. Suddaby.
### Chief U.S. District Judge

- The 1/3/2010 revision added Magistrate Judge Andrew T. Baxter.
- The 4/18/2011 revision added U.S. District Judge Mae A. D'Agostino and Magistrate Judge Victor E. Bianchini.
- The 12/16/2011 revision reflects Hon. Gary L. Sharpe as Chief Judge.
- The 2/10/2012 revision added Magistrate Judge Thérèse Wiley Dancks.
- The 9/1/2012 revision added Magistrate Judge Christian F. Hummel.
- The 10/1/2012 revision reflects the retirement of Senior Judge Neal P. McCurn.
- The 10/25/2013 revision includes information on Mandatory Mediation - See Gen.Order #47.
- The 11/4/2013 revision includes changes to deadlines for mandatory disclosures under Fed. Rule 26(a), and changes the date for the filing of the civil case management plan from 14 days prior to the conference to 7 days prior to the conference.
- The 12/29/2014 revision added U.S. District Judge Brenda K. Sannes.
- The 10/1/2015 revision reflects Hon. Glenn T. Suddaby as Chief Judge, added Magistrate Judge Daniel J. Stewart, and reflects the retirement of Hon. Randolph F. Treece.
- The 1/1/2016 revision reflects Hon. Gary L. Sharpe taking senior status.

## CIVIL CASE MANAGEMENT PLAN

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**Mattieu Burks**

No. **16-CV-759 FJS/DEP**

VS

**Stickney, et al**

---

**IT IS HEREBY ORDERED that,** Pursuant to Rule16(b), Federal Rules of Civil Procedure, a status and scheduling conference will be held in this case before the Honorable DAVID E. PEEBLES, United States Magistrate Judge on September 29, 2016, at 11:00 AM at the United States Courthouse, at 10th Floor,Syracuse, New York.

Counsel for all parties or individuals appearing pro se in the above-captioned action are directed to confer in accordance with Fed. R. Civ. P. 26(f) with respect to all of the agenda items listed below, no later than **twenty-one (21) days** before the scheduled Rule 16 Conference. Following that Rule 26(f) meeting, a report of the results of the conference, in the format set forth below, must be filed with the clerk no later than seven (7) **days** prior to the scheduled Rule 16 conference with the Court. Matters which the Court will discuss at the status conference will include the following: (insert a separate subparagraph as necessary if parties disagree):

**1) JOINDER OF PARTIES:** Any application to join any person as a party to this action shall be made on or before the _____ day of _____, _____.

**2) AMENDMENT OF PLEADINGS:** Any application to amend the pleadings to this action shall be made on or before the _____ day of _____, _____.

**3) DISCOVERY:** All discovery in this action shall be completed on or before the _____ day of _____, _____. **(Discovery time table is to be based on the complexity of the action)**

**4) MOTIONS:** All motions, including discovery motions, shall be made on or before the _____ day of _____, _____. **(Non-Dispositive motions including discovery motions may only be brought after the parties have complied with Section IX of General Order #25)**

5) PROPOSED DATE FOR THE COMMENCEMENT OF TRIAL: The action will be ready to proceed to trial on or before the _____ day of _____, _____. It is anticipated that the trial will take approximately _____ days to complete. The parties request that the trial be held in _____, N.Y. (The proposed date for the commencement of trial must be within 18 months of the filing date).

6) HAVE THE PARTIES FILED A JURY DEMAND: _____ (YES) / _____ (NO).

7) DOES THE COURT HAVE SUBJECT MATTER JURISDICTION? ARE THE PARTIES SUBJECT TO THE COURT'S JURISDICTION? HAVE ALL PARTIES BEEN SERVED?

_____

_____

_____

_____

8) WHAT ARE THE FACTUAL AND LEGAL BASES FOR PLAINTIFF'S CLAIMS AND DEFENDANT'S DEFENSES (INCLUDE COUNTERCLAIMS & CROSSCLAIMS, IF APPLICABLE)?

9) WHAT FACTUAL AND LEGAL ISSUES ARE GENUINELY IN DISPUTE?

10) CAN THE ISSUES IN LITIGATION BE NARROWED BY AGREEMENT OR BY MOTIONS? ARE THERE DISPOSITIVE OR PARTIALLY DISPOSITIVE ISSUES APPROPRIATE FOR DECISION ON MOTION?

_____

_____

_____

11) WHAT SPECIFIC RELIEF DO THE PARTIES SEEK? WHAT ARE THE DAMAGES SOUGHT?

_____

_____

_____

## 12) DISCOVERY PLAN:

### A.    Mandatory Disclosures

The parties will exchange the mandatory disclosures required under Rule 26(a)(1) at least seven (7) days prior to the date of the Rule 16 conference, unless they have obtained prior approval from the assigned Magistrate Judge to extend that deadline.

### B.    Subjects of Disclosure

The parties jointly agree that discovery will be needed to address the following subjects:

### C.    Discovery Sequence

Describe the parties' understanding regarding the timing of the discovery, and state whether it is anticipated that discovery will be phased to address different issues in stages.

### D.    Written Discovery

Describe the written discovery demands which the parties contemplate serving under Rules 33, 34 and 36, including when they will be promulgated, the areas to be covered, and whether there is any need for any party to exceed the number of interrogatories permitted under Rule 33.

### E.   Depositions

Set forth the parties' expectations regarding depositions, including the approximate number
to be taken, their location, a general description of the deponents, and an indication of
whether any non-party fact depositions are anticipated.

### F.   Experts

Set forth the parties' expectations regarding the retention of experts, and identify any
particular issues to be addressed by the court concerning the retention and exchange of the
information regarding experts, including whether the parties seek a variance from the expert
disclosure requirements of the form uniform pretrial scheduling order typically issued by the
court (i.e., initial expert disclosure at least ninety days, responsive expert disclosures at least
forty-five days, and rebuttal reports due at least thirty days, before the close of discovery).

### G.   Electronic Discovery

Set forth the parties' understanding and expectations regarding discovery of electronically
stored information. This description should include any agreements reached with respect to
the retention of electronically stored information and the manner in which it will be
produced, if requested. The parties should also identify any agreements regarding the manner
in which electronically stored information subject to claims of privilege or work product
protection will be handled, and whether a court order will be requested, either on stipulation
or otherwise, to address this issue. If an agreement has been reached on the entry of such an
order, provide a brief description of the provisions which will be included in a proposed
order.

**H.    Protective Orders**

If the parties anticipate requesting a protective order from the court pursuant to Rule 26(c), describe the basis for the request and nature of the proposed protective order.

_____   _____   _____   _____   ____   ____

____  ___  ___   ___  _____  _____   ___  _____  ____  ___   ___  ___  _____  _____  ___

_____  ___   ____   ___   ___   ___   ___   _____

**I.    Anticipated Issues Requiring Court Intervention**

Provide a brief description of any discovery related issues which, the parties reasonably anticipate, may require court intervention.

**13) IS IT POSSIBLE TO REDUCE THE LENGTH OF TRIAL BY STIPULATIONS, USE OF SUMMARIES OR STATEMENTS, OR OTHER EXPEDITED MEANS OF PRESENTING EVIDENCE? IS IT FEASIBLE AND DESIRABLE TO BIFURCATE ISSUES FOR TRIAL?**

**14) ARE THERE RELATED CASES PENDING BEFORE THE JUDGES OF THIS COURT?**

**15) IN CLASS ACTIONS, WHEN AND HOW WILL THE CLASS BE CERTIFIED?**

**16) WHAT ARE THE PROSPECTS FOR SETTLEMENT? Please circle below the prospect for settlement:**

1----2-----3-----4-----5----6-----7-----8-----9-----10
(VERY UNLIKELY)→ → → → → → → → → → → → (LIKELY)

CANNOT BE EVALUATED PRIOR TO _____(DATE)

Page 5

## HOW CAN SETTLEMENT EFFORTS BE ASSISTED?

*(Do not indicate any monetary amounts at this time, settlement will be explored by the Magistrate Judge at the time of the initial status conference)*

*COMPLETE QUESTION 17 ONLY IF YOUR FILING ORDER COVER SHEET WAS CHECKED AS AN ADR TRACK CASE - Subject to Mandatory Mediation under General Order #47.*

## 17) IF YOUR CASE WAS SELECTED AS A QUALIFYING MANDATORY MEDIATION CASE, CONFIRM THAT YOU HAVE:

A.   Reviewed General Order #47?       YES / NO

B.   Reviewed the List of Court Approved Mediators available on the NDNY website?       YES / NO

C.   Prepared to discuss with the Court, at the conference, whether your case should be opted out of the program?       YES / NO

D.   Discussed the time frame needed to complete Mandatory Mediation?       YES / NO

**********************************************************************************************

Pursuant to Fed. R. Civ. P. 26(f) a meeting was held on _____ at _____ and was attended by:       (Date)       (Place)

_____ for plaintiff(s)

_____ for defendant(s)_____

(party name)

_____ for defendant(s)_____

(party name)

At the Rule 16(b) conference, the Court will issue an order directing the future proceedings in this action. The parties are advised that failure to comply with this order may result in the imposition of sanctions pursuant to Federal Rules of Civil Procedure 16(f).

*Please detach this case management plan form and file electronically with the clerk no later than seven (7) days in advance of the conference date.*

## CASE ASSIGNMENT FORM

### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF NEW YORK

CIVIL ACTION NUMBER    16-CV-759, FJS/DEP

ALL CORRESPONDENCE AND FILINGS SHOULD BEAR THE INITIALS OF THE ASSIGNED JUDGE AND
MAGISTRATE JUDGE IMMEDIATELY FOLLOWING THE CIVIL ACTION NUMBER.
*(IE: CIVIL ACTION NO 5:11-CV-0123, NAM-DEP)*

DOCUMENTS SHOULD BE FILED IN ACCORDANCE WITH GENERAL ORDER #22.

ACTION ASSIGNED TO THE JUDGE AND MAGISTRATE JUDGE CHECKED BELOW:

| | | INITIALS |
|---|---|---|
| __X__ | SENIOR JUDGE FREDERICK J. SCULLIN, JR. | (FJS) |
| __X__ | MAGISTRATE JUDGE DAVID E. PEEBLES | (DEP) |

### PRO SE LITIGANTS:
### SEND ALL ORIGINAL PAPERS TO THE CLERK'S OFFICE LISTED BELOW:

Clerk, U.S. District Court
Federal Building & Courthouse
P.O. Box 7367
Syracuse NY 13261-7367

**All papers filed with the Court must conform to Local Rule 10.1**

### ~ COUNSEL ~

### ALL DOCUMENTS SHALL BE FILED ELECTRONICALLY
### ON THE COURT'S CM/ECF SYSTEM

### PLEASE REFER TO GENERAL ORDER #22
### FOR PROCEDURES FOR FILING DOCUMENTS ELECTRONICALLY

ALL **NON-DISPOSITIVE** MOTIONS ARE TO BE MADE RETURNABLE ON A SUBMIT BASIS BEFORE THE ASSIGNED **MAGISTRATE JUDGE**. *PLEASE REFER TO LOCAL RULE 7.1(b)1.* **ALL MOTIONS FILED AND MADE RETURNABLE BEFORE MAGISTRATE JUDGES WILL BE TAKEN ON A SUBMIT BASIS UNLESS:** THE PARTIES REQUEST ORAL ARGUMENT AND/OR THE COURT DIRECTS THE PARTIES TO APPEAR FOR ORAL ARGUMENTS, PROVIDED, HOWEVER, THAT MAGISTRATE JUDGE DAVID E. PEEBLES REQUIRES ORAL ARGUMENT ON ALL MOTIONS UNLESS THE COURT DIRECTS OTHERWISE.

For more specific schedules please visit our website at:
**www.nynd.uscourts.gov**

## MONTHLY MOTION SCHEDULES

| SENIOR JUDGE FREDERICK J. SCULLIN, JR. | MAGISTRATE JUDGE DAVID E. PEEBLES |
|---|---|
| *REGULAR MOTION DATES, as follows:* <br> 2nd FRIDAY OF EACH MONTH IN SYRACUSE - Civil motions at 10:00 AM, Criminal motions at 11:00 AM <br> 4th FRIDAY OF EACH MONTH IN ALBANY - Civil motions at 10 AM, Criminal motions at 11:00 AM. <br> All civil motions will be taken ON SUBMIT unless otherwise notified by the Court. Any request for oral argument must be submitted to the Court, in writing, no later than 14 days prior to the motion return date. Argument will be held on Criminal motions. | 9:30 A.M.- 2ND AND 4TH WEDNESDAY OF EACH MONTH AT SYRACUSE. <br> 2:00 P.M.- 1ST FRIDAY OF EACH MONTH AT BINGHAMTON - Oral Argument expected on all motions unless otherwise directed |

## CONSENT TO THE EXERCISE
## OF CIVIL JURISDICTION BY A MAGISTRATE JUDGE

In accordance with the provisions of 28 U.S.C. Section 636(c), you are hereby notified that the United States Magistrate Judges of this district court, in addition to their other duties, may, upon consent of all the parties in a civil case, conduct any or all proceedings in the case, including a jury or non jury trial, and order the entry of a final judgment.

You should be aware that your decision to consent to the referral of your case to a United States Magistrate Judge for disposition is entirely voluntary and should be indicated by counsel endorsing the attached consent form for the plaintiff(s) and defendant(s). If the form is executed by all counsel for the parties (or by the parties if appearing pro se), it should be communicated solely to the clerk of the district court. ONLY if all the parties to the case consent to the reference to a magistrate judge will either the judge or magistrate judge to whom the case has been assigned be informed of your decision.

Your opportunity to have your case disposed of by a magistrate judge is subject to the calendar requirements of the court. Accordingly, the district judge to whom your case is assigned must approve the reference of the case to a magistrate judge for disposition.

In accordance with 28 U.S.C. Section 636(c) (3), an appeal from a judgment entered by a magistrate judge will be taken to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of a district court. See Also L.R. 72.2(b)(5).

Copies of the consent form are available in any office of the clerk of the court and on the court webpage at
www.nynd.uscourts.gov

**\*\*ATTACHED FOR YOUR CONSIDERATION IS A BLANK CONSENT FORM\*\***

Page 3

# UNITED STATES DISTRICT COURT
for the
Northern District of New York

**Mattieu Burks**

v.                                    Civil Action No.: **16-CV-759 (FJS/DEP)**

**Stickney, et al**

## NOTICE, CONSENT, AND REFERENCE OF A CIVIL ACTION TO A MAGISTRATE JUDGE

*Notice of a magistrate judge's availability.* A United States magistrate judge of this court is available to conduct all proceedings in this civil action (including a jury or nonjury trial) and to order the entry of a final judgment. The judgment may then be appealed directly to the United States court of appeals like any other judgment of this court. A magistrate judge may exercise this authority only if all parties voluntarily consent.

You may consent to have your case referred to a magistrate judge, or you may withhold your consent without adverse substantive consequences. The name of any party withholding consent will not be revealed to any judge who may otherwise be involved with your case.

*Consent to a magistrate judge's authority.* The following parties consent to have a United States magistrate judge conduct all proceedings in this case including the trial, the entry of a final judgment, and all post-trial proceedings.

| *Parties' printed names* | *Signatures of parties or attorneys* | *Dates* |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

### REFERENCE ORDER

**IT IS ORDERED:** This case is referred to a United States magistrate judge to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. §636(c) and Fed. R. Civ. P. 73.

Date: _____

_____
*District Judge's signature*

_____
*Printed name and title*

NOTE:   Return this form to the clerk of the court only if you are consent to the exercise of jurisdiction by a United States magistrate judge. Do not return this form to a judge.