IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

MATTIEU BURKS,

        Plaintiff,

  v.

CHAD STICKNEY, *et al.*,

        Defendants.

Civil Action No.
9:16-CV-0759 (FJS/DEP)

---

APPEARANCES:      OF COUNSEL:

FOR PLAINTIFF:

STOLL, GLICKMAN & BELLINA LLP    LEO GLICKMAN, ESQ.
475 Atlantic Avenue, Third Floor
Brooklyn, New York 11217

FOR DEFENDANTS:

HON. ERIC T. SCHNEIDERMAN    DENISE P. BUCKLEY, ESQ.
New York State Attorney General    ADRIENNE J. KERWIN, ESQ.
The Capitol    Assistant Attorneys General
Albany, NY 12224

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

## DECISION AND ORDER

This is a civil rights action brought by plaintiff Mattieu Burks, a New York State prison inmate who is represented by counsel, pursuant to 42 U.S.C. § 1983, against various employees of the New York State Department of Corrections and Community Supervision ("DOCCS"). Currently pending before the court is an application by plaintiff for sanctions based upon several occurrences during the course of pretrial discovery. For the reasons set forth below, plaintiff's motion will be granted in part.

I.   BACKGROUND

Plaintiff commenced this action on June 27, 2016. Dkt. No. 1. In his complaint, as amended, plaintiff alleges that defendants harassed and assaulted him while he was incarcerated in the Clinton Correctional Facility ("Clinton"), located in Dannemora, New York, and deprived him of certain basic necessities, including water and electricity, in an effort to dissuade him from cooperating with investigations conducted regarding prisoner abuse at Clinton and the introduction of contraband into the facility. Dkt. No. 36. Plaintiff's complaint asserts Eighth Amendment cruel and unusual punishment claims against several named corrections officers, as well as additional, unidentified Doe defendants. *Id.*

2

The conduct of counsel for the parties, and in particular their interactions, has not lived up to the court's expectations. As a result of the inability to effectively and meaningfully communicate, counsel for both parties have greatly increased the complexity and expense associated with the litigation, and have required intervention from the court in connection with matters that should not have arisen or should have been resolved between counsel.

On October 17, 2017, plaintiff filed a motion seeking an award of sanctions based upon alleged failures on the part of defendants to engage in discovery. Dkt. No. 81. Plaintiff's motion centers upon four subjects, including (1) defendants' refusal to appear for depositions; (2) last minute changes in the conditions associated with a photographic array to be shown to plaintiff to assist him in identifying the individuals responsible for the constitutional violations alleged; (3) the misidentification of a defendant listed by plaintiff in his complaint only by the name "Corrections Officer Nolan" as "Darwin Nolan"; and (4) the need to elicit court assistance in scheduling the depositions of Superintendents Racette and Kirkpatrick. *Id.* Plaintiff's motion is brought pursuant to Rule 37(d) of the Federal Rules of Civil Procedure and the court's inherent power to regulate litigation. Dkt. No. 81-1 at 2, 10.

## II. DISCUSSION

### A. Scheduling of Depositions

On May 19, 2017, plaintiff served defendants with seven deposition notices. Dkt. No. 81-2 at 2; *see e.g.,* Dkt. No. 81-3. Those notices specified that the depositions would occur on dates that were not previously discussed and cleared with defendants' counsel, but which were more than one month after the notices were sent, and that they would be held in Albany, New York. *Id.* The initial response from defendants' attorney, sent by e-mail on May 26, 2017, was that she had contacted all but one of the seven defendants, four of whom were available on the dates requested and two who gave alternative dates within the specified time frame. Dkt. No. 88 at 4, *see* Dkt. No. 81-4 at 1-2; Dkt. No. 88-6. In that e-mail, defendants' counsel stated that "[t]he defendants will appear at Clinton CF for their depositions, not in Albany[,]" and offered the option of conducting the depositions by video conference with the witnesses testifying at Clinton and the attorneys participating from Albany. *Id.* Negotiations over the dates and locations of the depositions ensued. *Id.* Ultimately, depositions of five defendants were completed; four of those occurred in Albany, New York, and the fifth, that of defendant

4

Racette, was held in Plattsburgh, NY.[1] Dkt. No. 88 at 5. The remaining four depositions did not take place, apparently based upon a decision by plaintiff's counsel not to pursue the matter. *Id.*

Plaintiff now seeks to recover attorney's fees for 1.1 hours of time spent in negotiating over the dates and locations of the depositions. In the court's view, the requested compensation is not warranted. Although the negotiations ultimately proved to be difficult, it is not uncommon for parties to disagree over dates and locations of depositions and have to confer, in good faith – as the applicable federal and local rules require – in an attempt to arrive at agreement concerning those subjects. Plaintiff's request for compensation for time spent in negotiating over deposition dates and locations is therefore denied.

B.   Photographic Array

The issue raised by plaintiff's counsel in connection with his desire to have his client view a photographic array of corrections officers employed at the relevant times at Clinton illustrates the stark failure of communication between counsel in this case, and the deleterious effect it

---

[1]   The scheduling of defendant Racette's deposition is the subject of another issue raised in plaintiff's motion, and will be addressed separately. *See* pp. 14-18, *post.*

has had in complicating discovery and requiring court involvement that should have been unnecessary.

In an effort to identify the officers that allegedly assaulted him on July 5, 2015, plaintiff requested an opportunity to review a photographic array of corrections officers on duty in the block in which he was housed between July 5, 2015 at 11:00 p.m. and 7:00 a.m. on the following morning. Dkt. No. 81-1 at 3. On June 13, 2017, the parties agreed that the array would be presented to plaintiff at 9:00 a.m. on June 15, 2017, at the Great Meadow Correctional Facility ("Great Meadow"), located in Comstock, New York, where plaintiff was housed at the time. *Id.* The date coincided with a planned trip by plaintiff's counsel to meet with his client at Great Meadow on the afternoon of June 14, 2017. *Id.* at 3-4. In light of the parties' agreement, plaintiff's counsel reserved a hotel room for the night of June 14, 2017, near the facility. *Id.* at 4; *see* Dkt. No. 81-10.

At 7:06 p.m. on June 13, 2017, defendants' counsel sent an e-mail to plaintiff's attorney, stating the following:

> The photo array review in the above matter is confirmed for Thursday, June 15th, at [9:00 am] at Great Meadow CF. We have arranged for a court reporter to be present to transcribe the proceedings. The proceedings will also be videotaped.

6

Dkt. No. 56 at 3. Plaintiff's counsel responded by e-mail sent on June 13, 2017 at 8:47 p.m., questioning the new conditions. *Id.* That communication was followed by another e-mail, sent at 9:17 p.m. on that evening, asking that defendants' counsel contact plaintiff's attorney by 9:30 a.m. on the following day before he left for Great Meadow. *Id.* Having had no response, plaintiff's counsel left a voicemail message for defendants' attorney shortly after 9:30 a.m. on the following morning but, not having otherwise heard from defendants' counsel, he left for Comstock. *Id.*

According to plaintiff's counsel, the two attorneys spoke on the morning of June 14, 2017 and, after plaintiff's counsel reiterated his objection to the proposed conditions, defendants' attorney purportedly stated "that she was going forward with a photo array with [his] client that [sic] it would be on video and recorded, regardless of [his] presence." Dkt. No. 56 at 3. Citing an e-mail from her to plaintiff's counsel sent on June 14, 2017 at 11:14 a.m., defendants' attorney states that, in contrast to plaintiff's version, she advised plaintiff's counsel that it was his choice to attend or not to attend the photographic array, and if he chose not to attend, the proceeding would not go forward. Dkt. No. 88 at 7; *see* Dkt. No. 56-1 at 1.

Based upon the uncertainty in his mind as to whether defendants intended to go forward with the photographic array in his absence, plaintiff's counsel applied to the court for an injunction and temporary restraining order precluding defendants from engaging in the contemplated photographic array procedure. *See* Dkt. Nos. 55, 56. In response, defendants' attorney wrote to plaintiff's counsel on June 14, 2017, advising that if counsel did not attend the photo review, it would not take place, and she would inform the court of his failure to attend the review that was requested by him and scheduled to accommodate his travel plans. Dkt. No. 59-1 at 2. When plaintiff's counsel refused to withdraw the request for relief from the court, defendants' attorney wrote to the court on June 14, 2017, alleging that the application was made on the basis of a "materially false allegation." Dkt. No. 59. The result of plaintiff's motion was the issuance of an order, on June 14, 2017, by Senior District Judge Frederick J. Scullin, Jr., granting the motion and prohibiting defendants from proceeding to have plaintiff review photographs without his counsel being present.[2] Dkt. No. 58.

---

[2] In his order of June 14, 2017, Senior District Judge Scullin issued the following admonition:

8

In the court's view, this is a dispute that could and should have been resolved through meaningful communication between the parties, and without the need for court intervention. A simple telephone conversation held on June 14, 2017, would have clarified that defendants did not intend to go forward with the scheduled photographic array outside the presence of plaintiff's attorney, and the parties could then have negotiated regarding the parameters of the proceeding and, if necessary, agreed upon a mutually convenient date for rescheduling it. I am therefore disinclined to award costs and attorney's fees associated with the photographic array and plaintiff's motion for emergency injunctive relief from the court.[3]

C. Controversy Over the Identity of Defendant Correction Officer Nolan

In his complaint, plaintiff named "Correction Officer Nolan" as one of defendants. *See* Dkt. No. 1. At the time his complaint was prepared, plaintiff did not know the first name of the Correction Officer Nolan he

---

> The Court reminds counsel that their conduct is governed by the Rules of Professional Responsibility with regard to all of their interactions with opposing parties who are represented by counsel.

Dkt. No. 58 at 2 n.2.

[3]   I note that in his application to the court for emergency injunctive relief, plaintiff's counsel requested that he be awarded costs and attorney's fees. *See* Dkt. No. 55 at 5. In his order granting injunctive relief, however, Judge Scullin did not address that request.

9

intended to sue. *Id.* The summons and complaint were received at Clinton on August 23, 2016. Dkt. No. 88-39 at 2. Because neither the summons nor plaintiff's complaint provided a first name for Correction Officer Nolan, and there are approximately fourteen hundred employees at Clinton, an investigation was undertaken to determine which of three Correction Officer Nolans employed at the relevant times at Clinton was the individual plaintiff intended to name in his complaint. *Id.* at 2-3. As a result of those inquires, it was believed that Darwin Nolan was the correction officer referenced by plaintiff.[4] Dkt. No. 88-39 at 3. Defendants' attorney did not participate in the investigation, and instead was advised by Cassandra Savage, an assistant in the legal office at Clinton, of the results of the inquiry into the matter. *Id.* In the answer filed on behalf off defendants on October 13, 2016, Correction Officer Nolan was therefore identified as Darwin Nolan. Dkt. No. 22.

   A deposition of defendant Nolan was held on July 28, 2017. Dkt. No. 81-1 at 5. The testimony given during that deposition confirmed that, in fact, Darwin Nolan was not the Nolan intended to be sued by plaintiff. *Id.* at 5-6.

---

[4]    Although Darwin Nolan worked at Clinton at the times relevant to plaintiff's claims, he was not stationed there when the summons and complaint were served. Dkt.k No. 81-1 at 6.

Without more information, the court is unable to determine whether an ethical violation or other mischief occurred in connection with the decision to identify Darwin Nolan as the correction officer intended to be sued by plaintiff. Plaintiff's request for an award of costs and attorney's fees associated with this issue is therefore denied.

D.   <u>Depositions of Superintendents Kirkpatrick and Racette</u>

In the last portion of his motion, plaintiff seeks recovery of expenses associated with his efforts to schedule the depositions of defendants Racette and Kirkpatrick, and of having to apply to the court to compel those defendants to appear for depositions. In considering this portion of plaintiff's motion, the court takes notice that as a recently retired and a current superintendent of a large correctional facility such as Clinton, respectively, defendants Racette and Kirkpatrick have busy schedules that are sometimes difficult to accommodate when it comes to the scheduling of depositions. A careful review of the record now before the court, however, including the many e-mails exchanged between counsel, reflects that there was significant and needless difficulty in scheduling the depositions of those defendants.

On June 28, 2017, plaintiff's attorney informed defendants' counsel that he would be available to depose the seven defendants noticed,

including defendants Racette and Kirkpatrick, during the weeks of July 17 and July 24, 2017. Dkt. No. 81-1 at 6-7. After agreeing to conduct one deposition per day during the July 18 through 21, 2017 timeframe, and also on July 25, 27, and 28, 2017, on July 13, 2017, defendants' counsel e-mailed plaintiff's attorney and confirmed depositions for July 19, 2017 (defendant Kirkpatrick), July 20, 2017 (defendant Racette), July 24, 2017 (defendant Cross), July 25, 2017 (defendant Stickney), and July 28, 2017 (defendant Nolan). *Id.* at 7. Plaintiff agreed to that schedule. *Id.*

On July 17, 2017, defendants' counsel revised the schedule, offering to conduct depositions on July 20, 2017 (defendant Stickney), July 24, 2017 (defendant Cross), July 25, 2017 (defendant Kirkpatrick), July 28, 2017 (defendant Nolan), and August 1, 2017 (defendant Racette). Dkt. No. 81-1 at 7. Although inconvenient for plaintiff's counsel and the cause of disruption with his travel plans, he agreed to the revised schedule. *Id.* The deposition of Superintendent Kirkpatrick, however, which was scheduled to be held on July 25, 2017, was unilaterally cancelled by defendants on July 24, 2017, based upon the claim that he was ill. *Id.*

The Kirkpatrick deposition was ultimately rescheduled for September 20, 2017, on agreement of the parties. Dkt. No. 81-1 at 7. On September 8, 2017, however, defendants' attorney advised plaintiff's counsel that

12

Superintendent Kirkpatrick had a scheduling conflict and could not appear, but would be available on September 22, 2017. *Id.* Plaintiff's counsel reluctantly agreed to the rescheduling. *Id.* On the evening of September 21, 2017, however, after plaintiff's counsel arrived at his hotel room in the area, he was advised by defendants' attorney that defendant Kirkpatrick would not be appearing for deposition in September 22, 2017. *Id.* at 7-8. As a result of that cancellation on short notice, plaintiff's counsel unnecessarily incurred expenses for the court reporter ($350.00), the cost of the hotel room ($160.27), and mileage costs (amount not specified) for the failed deposition, and seeks recovery of those sums as well as compensation for one-half of the time expended in preparing for the Kirkpatrick deposition. *Id.*; *see* Dkt. Nos. 81-14, 81-15.

Superintendent Kirkpatrick has given a declaration which he swears, *inter alia*, that he was physically ill on July 25, 2017, and that it did not become clear to him until the prior day that he would not be well enough to attend the scheduled deposition. Dkt. No. 88-38 at 2. Superintendent Kirkpatrick also states in his declaration that a matter requiring his presence at Clinton on September 20, 2017, necessitated the rescheduling of his deposition to two days later. *Id.* at 3. The scheduled deposition on September 22, 2017, was postponed as a result of a serious

security issue at Clinton requiring a search of the entire Clinton Correctional Facility Annex.[5] Dkt. No. 88-38 at 3-4.

Superintendent Kirkpatrick's deposition was ultimately held on October 24, 2017. Dkt. No. 88-38 at 4. It was necessary, however, for plaintiff to apply to the court in order to obtain an order directing Superintendent Kirkpatrick, and, as will be seen, former Superintendent Racette, to appear for deposition. *See* Dkt. No. 79. That request for intervention resulted in the issuance of a text order on October 19, 2017, directing Superintendent Kirkpatrick to appear for deposition on October 24, 2017 in Albany, New York. Dkt. No. 82. In the court's view, court intervention should not have been necessary, and defendant Kirkpatrick should have appeared for deposition at a mutually agreed-upon date. Accordingly, I will grant plaintiff's request for sanctions.[6]

With regard to defendant Racette, defendants' counsel advised that he was out of town on July 18, 2017, but would be available on July 20,

---

[5] In his declaration Superintendent Kirkpatrick notes that at the time of the incident his First Deputy for Security was out on leave, and was therefore unavailable to supervise any search in Kirkpatrick's absence. Dkt. No. 88-38 at 3-4.

[6] With regard to preparation time, the court believes that plaintiff's counsel should not be compensated for that time since the deposition of Superintendent Kirkpatrick ultimately went forward. In addition, having determined that cancellation of the September 22, 2017 deposition was due to exigent and unforeseen circumstances, I will not include the court reporter cancellation fee, the hotel room for plaintiff's counsel, or mileage in the sanctions awarded against defendant Kirkpatrick.

2017. Dkt. No. 81-1 at 8. On July 14, 2017, however, defendants' counsel advised plaintiff's attorney that defendant Racette was no longer available on that date. *Id.* Defendants' counsel then wrote to plaintiff's attorney on July 17, 2017, stating that she was "aiming for" August 1, 2017 for a deposition of defendant Racette, subject to confirmation. *Id.* In e-mails of July 25 and 27, 2017, the parties appeared to lock into August 1, 2017, as a date for the deposition of defendant Racette. Dkt. Nos. 81-18 at 1-4; 88 at 10. When plaintiff's counsel probed the possibility of deferring the deposition into September, defendants' counsel responded that defendant Racette was not available in September and suggested that the deposition proceed on August 1, 2017. Dkt. No. 81-1 at 9. On July 27, 2017, plaintiff's counsel wrote to request that the deposition of defendant Racette be put off and that the parties try to reschedule it in September. Dkt. No. 88-22 at 1. Defendants' counsel responded by reiterating that defendant Racette was not available in September but was still available in August 1, 2017. *Id.* It appears in the record that after plaintiff's counsel opted not to go forward on August 1, 2017, it was agreed that defendant Racette be deposed by telephone on October 5, 2017. *See* Dkt. No. 88-24 at 1.

On September 8, 2017 Attorney Buckley informed Attorney Glickman that defendant Racette was no longer available for deposition on

October 5, 2017, but could appear on October 11, 2017. Dkt. No. 88-25 at 2. No reason was given for the unavailability. *Id.* After a brief exchange of e-mails Attorney Glickman notified defendants' counsel that he was not available on October 11, 2017, the alternative date proposed for defendant Racette's deposition. *Id.*; Dkt. No. 88-26 at 1. After a further exchange of e-mails proved unsuccessful, plaintiff's counsel wrote to the court on October 11, 2017, requesting assistance in the scheduling of depositions of defendants Racette and Kirkpatrick. Dkt. No. 79. As a result of that letter, the court conducted a telephone conference on October 17, 2017, on the record, and subsequently issued a text order on October 19, 2017, affixing for the depositions of defendants Kirkpatrick and Racette. Dkt. No. 82.

Having carefully reviewed the chronology of events, the court is of the firm belief that absent its intervention, the depositions of defendants Kirkpatrick and Racette would not have occurred. Plaintiff's counsel should not have had to elicit the court's assistance in scheduling those depositions. Accordingly, I conclude that the award of sanctions against defendants Kirkpatrick and Racette is appropriate.[7]

---

[7] Having carefully reviewed the record, the court finds no basis to conclude that defendants' attorney was in any way complicit in the lack of cooperation on the part of defendants Kirkpatrick and Racette in scheduling their depositions.

The total amount of sanctions sought in plaintiff's motion is $6,768.49, a sum that includes fees and costs in the amount of $4,115.29 for the underlying alleged violations, plus an additional $2,653.20 for drafting the motion for sanctions. Dkt. No. 81-1 at 12. As was previously noted, some of the expenses claimed relate to mileage, court reporter expenses, and hotel costs associated with missed or cancelled depositions.

It is difficult to gauge precisely what amount of time was wasted by plaintiff's counsel in attempting to schedule the depositions of defendants Kirkpatrick and Racette. Clearly, however, there was unnecessary effort required on the part of plaintiff's attorney to attempt to schedule those depositions and, ultimately, to apply to the court for appropriate relief. Calculated at the requested rate of $198 per hour, I estimate that three hours of attorney time was unnecessarily spent as a result of the efforts to schedule those depositions, and therefore will award plaintiff $594.00 in attorney's fees, apportioned equally between defendants Racette and Kirkpatrick.[8] In addition, plaintiff is entitled to recover a portion of the costs

---

[8] Recovery of attorney's fees in this case is governed by 42 U.S.C. § 1997e, which provides, in relevant part, as follows:

    (d) Attorney's fees

17

related to the bringing of this motion. *See e.g.*, *Gagasoules v. MBF Leasing LLC*, 286 F.R.D. 205, 216 (E.D.N.Y. 2012). Since four main issues were raised, but sanctions were awarded on only one issue, I will include twenty-five percent of the amount sought, or $663.30, again apportioned equally between defendants Racette and Kirkpatrick, for a total award of $628.65 against each defendant.

III. SUMMARY AND ORDER

Discovery in this case has been contentious and presented the court with significant challenges. Many of the issues raised by plaintiff in his motion for sanctions resulted from breakdowns of communications and were not attributable to bad faith or obstreperous behavior. The efforts to schedule the depositions of defendants Racette and Kirkpatrick, however, demonstrated a stark lack of cooperation on the part of the deponents, and required plaintiff to expend effort that should have been unnecessary.

---

\* \* \*
> (3) No award of attorney's fees in an action described in paragraph (1) shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18 for payment of court-appointed counsel.

42 U.S.C. § 1997e(d)(3). The Criminal Justice Act rate for assigned counsel in non-capital cases in the Northern District of New York is $132. Guide to Judiciary Policy, Vol. 7A, Ch. 2 § 230.16(a). Accordingly, the maximum rate for recovery of attorney's fees under the PLRA is $198.

18

Accordingly, plaintiff's motion will be granted and sanctions will be awarded solely with respect to that issue. Based upon the foregoing, it is hereby

ORDERED as follows:

(1) Plaintiff's motion for sanctions (Dkt. No. 81) is GRANTED, limited to the request for the imposition of sanctions against defendants Racette and Kirkpatrick based upon the difficulty in scheduling their depositions.

(2) Plaintiff is hereby awarded the sum of $628.65 each against defendants Racette and Kirkpatrick, as sanctions, to be paid within thirty days of the date of this order.

(3) Except to the extent of the foregoing, plaintiff's motion for sanctions (Dkt. No. 81) is DENIED.

(4) The clerk is respectfully directed to forward to the attorneys in this action the New York State Bar Association publication entitled "Civility in Litigation: A Voluntary Commitment." In the future, the attorneys for the parties are expected to abide by the rules set forth in that pamphlet, and to treat each other with courtesy, dignity, and professionalism.

_____
David E. Peebles
U.S. Magistrate Judge

Dated:     January 29, 2018
           Syracuse, NY