**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

MATTIEU BURKS,

                              Plaintiff,

                       v.                                      9:16-CV-759
                                                                               (FJS/ML)

CORRECTION OFFICER CHAD STICKNEY,
CORRECTION OFFICER NOLAN, CORRECTION
OFFICER SMITH, CORRECTION OFFICER
EDWARD L. PEPPER, SERGEANT JOHN MARK
CROSS, SUPERINTENDENT STEVEN RACETTE,
SUPERINTENDENT MICHAEL KIRKPATRICK,
DAVID J. CHAMBERLAIN, and JOSHUA R. WOOD,

                              Defendants.

---

**APPEARANCES**                                       **OF COUNSEL**

**STOLL, GLICKMAN & BELLINA, LLP**        **LEO GLICKMAN, ESQ.**
475 Atlantic Avenue, Third Floor
Brooklyn, New York 11217
Attorneys for Plaintiff

**OFFICE OF THE NEW YORK**              **DENISE P. BUCKLEY, AAG**
**STATE ATTORNEY GENERAL**             **ADRIENNE J. KERWIN, AAG**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

    Mattieu Burks ("Plaintiff") brings this action against various correction officers and superintendents ("Defendants"), who work at the Clinton Correctional Facility, seeking special, compensatory, and punitive damages, costs, and attorney's fees for alleged violations of his

civil rights while incarcerated at that facility. *See generally* Dkt. No. 36, Amended Compl. Pending before the Court is Defendants' motion for summary judgment brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See* Dkt. No. 110.

## II. BACKGROUND

Plaintiff alleged that, on February 26, 2015, he was moved to Clinton Correctional Facility, where correction officers routinely subjected him to "verbal harassment" and assaults. *See* Dkt. No. 36 at ¶¶ 26-27, 30-31. Plaintiff's first alleged assault occurred in April of 2015; he claimed that Defendant Stickney and other officers physically assaulted him by kicking him in the testicles and otherwise "roughing him up." *See id.* at ¶¶ 29-30. He also alleged that there were various times between March and May of 2015 where Defendant Stickney and other officers verbally abused, threatened, and assaulted him. *See id.* at ¶ 31.

According to Plaintiff, following the infamous escape on June 6, 2015—in which two inmates, with the help of correction officers, fled from Clinton Correctional Facility—correction officers began beating up certain inmates to stop them from talking to investigators about officer complicity. *See id.* at ¶ 43. Plaintiff claimed that correction officers repeatedly threatened and harassed him because he worked in Tailor Shop 1 with Richard Matt, one of the escaped inmates, and Joyce Mitchell, a Clinton employee convicted of helping to facilitate the escape. *See id.* at ¶ 46. Plaintiff also claimed that a correction officer assaulted him while he was in his cell on the night of July 5, 2015. *See id.* at ¶¶ 53-55. Plaintiff alleged that he put in for a "sick call" and went to the clinic on July 7, 2015, but when he reported the assault and that he was dizzy the nurse and other correction officers intimidated him until he withdrew his complaint. *See id.* at ¶¶ 57-58. Plaintiff also claimed that he was placed in keep-lock for fighting and for failing to report his own medical condition after the July 5, 2015 assault. *See id.*

at ¶ 63. Even though Plaintiff's internal fighting conviction was overturned, he asserted that he was not let out of keep-lock. *See id.* at ¶ 64. Plaintiff alleged that, while in keep-lock, Defendants Smith and Pepper told porters not to bring him food; and he had no water, electricity, or access to a toilet in his cell. *See id.* at ¶¶ 65, 68. Finally, Plaintiff claimed that, on August 18, 2015, Defendant Smith walked by his cell and punched him in the face through the bars. *See id.* at ¶ 69.

Plaintiff argues that he filed many grievances about the above-described actions, *see* Dkt. No. 114 at ¶¶ 1-2 (citing Dkt. No. 110-2, Pl's Depo, Ex. A); however, Defendants assert that they only have one Inmate Grievance Complaint, grievance number CL-67156-15, on file for him, *see* Dkt. No. 110-17 at ¶¶ 1-2. Grievance number CL-67156-15 was dated July 2, 2015, and stamped that it was received in the superintendent's office on July 6, 2015. *See* Dkt. No. 110-6, Ex. B.

In that grievance, Plaintiff claimed that he submitted "numerous grievance complaints pertaining to [harassment], threats and assault against [him] by staff which began after [his] initial meeting with investigators." *Id.* Plaintiff complained that he received no response to those complaints and no efforts were made to prevent further harm to him. *See id.* Plaintiff alleged that he had several witnesses who had begun to contact outside agencies and who were willing to speak on his behalf. *See id.* Plaintiff also attached a letter to Defendant Kirkpatrick, as the superintendent, explaining that he has been harassed, likely due to his rapport with Richard Matt, "in order to suppress [his] potential of 'snitching' on officers." *See id.* Plaintiff claimed that he suffered physical threats and assault and he was "seeking to avoid further escalation" of those problems. *See id.* On July 16, 2015, Defendant Kirkpatrick denied Plaintiff's grievance because there was "no evidence of improper staff conduct[.]" *See id.*

Plaintiff filed his complaint in the instant action on June 27, 2016, *see* Dkt. No. 1, and his Amended Complaint on March 31, 2017, *see* Dkt. No. 36. In his Amended Complaint, Plaintiff alleged the following six causes of action, all brought pursuant to 42 U.S.C. § 1983:

(1) Assaults in April 2015 in violation of Plaintiff's Eighth Amendment rights;

(2) Assault on July 5, 2015, in violation of Plaintiff's Eighth Amendment rights;

(3) Assault in keep-lock, in violation of Plaintiff's Eighth Amendment rights;

(4) "Denial of water, electricity, and even the meager privileges in keep-lock, the guards['] refusal to release Plaintiff from keep[-]lock, and their attempts to deny him food and water is 'repugnant to the conscience of mankind'" and in violation of Plaintiff's Eighth and Fourteenth Amendment rights;

(5) Supervisory liability in violation of Plaintiff's Eighth Amendment rights; and

(6) Deliberate indifference to a serious medical condition in violation of Plaintiff's Eighth Amendment rights.

*See generally* Dkt. No. 36 at ¶¶ 77-109.

### III. DISCUSSION

**A. Legal standard governing motions for summary judgment**

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. Under this Rule, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all reasonable inferences, in a light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).

**B. Failure to exhaust administrative remedies**

The Prison Litigation Reform Act ("PLRA") governs litigation regarding violations of inmates' civil rights. Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Section 1997e(a) requires 'proper exhaustion' – that is, 'using all steps that the agency holds out, and doing so properly.'" *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002))). "This entails both 'complet[ing] the administrative review process in accordance with the applicable procedural rules,' *Woodford*, 548 U.S. at 88, 126 S. Ct. 2378, and providing the 'level of detail necessary in a grievance to comply with the grievance procedures.'" *Id.* (quoting *Jones v. Bock*, 549 U.S. 199, 218, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007)); (citing *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009)). "Exhaustion is mandatory – unexhausted claims may not be pursued in federal court." *Id.* (citation omitted).

In New York State prisons, the Department of Corrections and Community Supervision ("DOCCS") has a well-established three-step Inmate Grievance Program ("IGP"). *See* 7 N.Y.C.R.R. § 701.5. First, "[a]n inmate must submit a complaint to the [grievance] clerk within 21 calendar days of an alleged occurrence on an inmate grievance complaint form (form #2131)." 7 N.Y.C.R.R. § 701.5(a)(1). Representatives of the Inmate Grievance Resolution Committee ("IGRC") have sixteen calendar days after a grievance is filed to resolve the grievance informally; then, if there is no resolution, the full committee must conduct a hearing within sixteen calendar days to answer the grievance or make a recommendation to the

superintendent. *See* 7 N.Y.C.R.R. § 701.5(b)(1)-(2). The committee must communicate its decision to the grievant and any direct parties, in writing, within two working days of the hearing. *See* 7 N.Y.C.R.R. § 701.5(b)(3).

Second, a grievant may appeal the IGRC's decision to the superintendent by completing and signing the appeal section of the IGRC response form (Form #2131) and submitting it to the grievance clerk within seven calendar days after receipt of the IGRC's written response. *See* 7 N.Y.C.R.R. § 701.5(c)(1). If a grievant does not file an appeal upon the IGRC's denial, "it will be presumed that the grievant or direct party accepts the committee's recommendation." *Id.* If the grievance concerns an "institutional issue," the superintendent must render a decision on the grievance within twenty calendar days from the time the appeal was received. *See* 7 N.Y.C.R.R. § 701.5(c)(3)(ii). However, if the grievance concerns a DOCCS-wide policy issue, the appeal is forwarded directly to the Central Office Review Committee ("CORC") for a decision rendered in accordance with the third step. *See* 7 N.Y.C.R.R. § 701.5(c)(3)(i); *see also Ash v. Johnston*, 9:18-CV-738 (MAD/ML), 2020 U.S. Dist. LEXIS 11856, *10-*11 (N.D.N.Y. Jan. 23, 2020).

Third, the grievant may appeal to the CORC by completing and signing Form # 2133 and submitting it to the grievance clerk within seven calendar days after receipt of the superintendent's written response to the grievance. *See* 7 N.Y.C.R.R. § 701.5(d)(1)(i). The CORC is required to render a written decision within thirty calendar days from the time it receives the appeal. *See* N.Y.C.R.R. § 701.5(d)(3)(ii).

Finally, "[g]rievances claiming employee harassment, including claims of excessive force, 'are of particular concern to the administration of [DOCCS] facilities,' and subject to an expedited procedure whereby the grievance goes directly to the facility superintendent." *Ash*, 2020 U.S. Dist. LEXIS 11856, at * 11 (quoting [7 N.Y.C.R.R.] § 701.8; citing, *e.g.*, *Torres v.*

*Carry*, 691 F. Supp. 2d 366 (S.D.N.Y. 2009)). If the grievant wishes to appeal the superintendent's response to the CORC, he must file a Notice of Decision to Appeal (Form #2133) with the inmate grievance clerk within seven calendar days of receipt of that response. *See* 7 N.Y.C.R.R. § 701.8(h).

"Generally, if a plaintiff fails to follow each of the required steps of the IGP, including receipt of a decision from CORC, prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA." *Ash*, 2020 U.S. Dist. LEXIS 11856, at *12 (citing *Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006)). However, there is a textual exception to mandatory exhaustion requirement in that only "available" administrative remedies must first be exhausted. *See id.* at *13; *see also* 42 U.S.C. § 1997e(a); *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). An administrative remedy may be "unavailable" for various reasons, including intimidation and impossibility.

To determine whether Plaintiff has exhausted his administrative remedies, the Court has divided Plaintiff's claims into three categories, which it discusses in turn.

### 1. *Alleged April 2015 assaults*

Defendants argue that Plaintiff did not exhaust his administrative remedies with respect to the alleged incidents in April 2015 where Plaintiff contends Defendant Stickney and other correction officers assaulted him. *See* Dkt. No. 110-18 at 10. The DOCCS IGP Supervisor, Christine Gregory, attested that Plaintiff did not file any grievances while incarcerated at Clinton Correctional Facility other than the CL-67156-15 grievance. *See* Dkt. No. 110-6 at ¶¶ 30, 37. That grievance did not identify who assaulted him, and that grievance was filed more than twenty-one days after the alleged assault. *See id.* at ¶ 32.

Plaintiff contends that the IGP was not available to him in connection with the April 2015 assaults due to intimidation. *See* Dkt. No. 113 at 10. Plaintiff testified that he did not file a grievance because he had just been assaulted by correction officers who told him to remain quiet. *See* Dkt. No. 110-2, Ex. A. at 81-82. However, Plaintiff also admitted that he wrote outside agencies trying to seek some type of recourse, and he delivered those letters to a mailbox within the prison. *See id.*

A plaintiff is estopped from having to exhaust his administrative remedies where "defendants acted affirmatively to prevent an inmate from availing him or herself of the grievance procedures." *Pridgen v. Beatie*, 9:16-CV-535 (DNH/CFH), 2018 U.S. Dist. LEXIS 8150, *19 (N.D.N.Y. Jan. 17, 2018) (citations omitted). Defendants "act affirmatively" to intimidate by making verbal and physical threats of retaliation, physically assaulting the plaintiff, denying him grievance forms or writing implements, or transferring the plaintiff. *See id.* (citations omitted). "However, generalized fear of retaliation is insufficient to overcome a failure to exhaust administrative remedies." *Id.* (citing *Salmon v. Bellinger*, No. 9:14-CV-0827 (LEK/DJS), 2016 U.S. Dist. LEXIS 87478 (N.D.N.Y. July 5, 2016)).

Here, although Plaintiff alleges that he was intimidated, assaulted, and told to stay quiet, there is no evidence that Defendants affirmatively prevented him from availing himself of the grievance procedures. Further, Plaintiff admitted that he wrote letters to outside agencies to seek some type of recourse, which he clearly was not too intimidated to do. The Court finds that the IGP was available to Plaintiff after the alleged April 2015 assault; yet he failed to file a grievance. Accordingly, Plaintiff failed to exhaust his administrative remedies with respect to his first cause of action.

   2. *Plaintiff's grievance number CL-67156-15*

Plaintiff's grievance CL-67156-15, which Defendant Kirkpatrick received on July 6, 2015, included allegations of verbal harassment, threats, and assaults. *See* Dkt. No. 110-6, Ex. B. The parties dispute whether Plaintiff reported the alleged July 5, 2015 assault in that grievance. *See generally* Dkt. Nos. 110-18 and 113. Plaintiff claims that, although his grievance was dated July 2, 2015, he did not write it until after the July 5, 2015 assault. Plaintiff alleges that Sergeant Peck, who investigated the grievance, noted that, on July 7, 2015, Sergeant Cross interviewed Plaintiff about the harassment and assault alleged in his grievance. *See* Dkt. No. 113 at 14 (citing Dkt. Nos. 117-2, 117-3). Plaintiff points to Sergeant Cross's memorandum about his interview with Plaintiff, in which indicated that he investigated the July 5, 2015 assault, but he could not find any witnesses. *See id.* Furthermore, Plaintiff noted that he testified that he grieved the assault. *See id.* (citing Dkt. No. 110-2, Ex. A at 180).

For purposes of this argument, even if the Court accepts that Plaintiff included the alleged July 5, 2015 assault in grievance CL-67156-15, the Court finds that he failed to exhaust his administrative remedies. This is because Plaintiff did not appeal Defendant Kirkpatrick's denial of his grievance to the CORC. Although Plaintiff argued that he appealed the grievance denial—and attached his signed appeal statement as support—it is clear that the grievance clerk did not sign it. *See* Dkt. No. 117-5.

Furthermore, Rachael Seguin, the IGP Assistant Director, attested that she conducted a diligent search of CORC records for determinations upon grievance appeals that Plaintiff brought. *See* Dkt. No. 110-4 at ¶ 16. According to Ms. Seguin, DOCCS records reflect that Plaintiff filed two grievance appeals from January 1, 2015, but neither of those grievances involved allegations pertaining to Plaintiff's confinement at Clinton Correctional Facility. *See id.* at ¶¶ 17-19. Ms. Seguin attached Plaintiff's DOCCS inmate grievance records as support.

*See* Dkt. No. 110-5. The Court thus holds that Defendants have met their burden of showing that no reasonable factfinder could find that Plaintiff appealed grievance number CL-67156-15 to the CORC; and, accordingly, he failed to exhaust his administrative remedies with respect to the claims in that grievance.[1]

### 3. *Plaintiff's remaining claims*

Plaintiff's remaining claims are for (1) an alleged assault while in keep-lock; (2) denial of water, electricity, and a toilet while wrongfully detained in keep-lock; (3) supervisory liability with respect to Plaintiff's assaults; and (4) deliberate indifference to a serious medical condition after he was allegedly assaulted on July 5, 2015. *See* Dkt. No. 36 at ¶¶ 85-109. Defendants assert that Plaintiff did not make any of these claims in grievance number CL-67156-15; and, thus, he failed to administratively exhaust these claims. *See* Dkt. No. 110-18 at 10-11.

Plaintiff responds that the IGP was unavailable to him to report these claims due to the process being "impossible to use." *See* Dkt. No. 113 at 11. Plaintiff states that, after he reported the July 5, 2015 assault, he was sent to keep-lock, a unit that is part of the facility's "special housing unit" where his movement and liberty were severely restricted, even by prison standards. *See id.* at 13. Plaintiff claims that prison officials handle the delivery of grievances from inmates housed in special housing; and, therefore, Plaintiff had to hand his grievance to the very officers about whom he was grieving. *See id.* Plaintiff argues that he did not have access to deposit his grievance in the mail himself, but that he filed "several grievances" while

---

[1] Alternatively, Plaintiff argues that he could not have grieved the July 5, 2015 assault because the IGP was unavailable to him due to "impossibility." *See* Dkt. No. 113 at 11-14. The Court rejects this argument for the same reasons it finds the IGP process was available to him for his remaining claims, discussed *infra*.

- 10 -

there and "whether the officers took it and opened it and read it and threw it away," he did not know for sure. *See id.* at 13-14; *see also* Dkt. No. 110-2, Ex. A, at 195.

"[I]t is well-settled that where an inmate does not receive a response to a grievance, the inmate must appeal to the next level of review notwithstanding the lack of response at the first level of review." *Pridgen*, 2018 U.S. Dist. LEXIS 8150, at *17 (citation omitted). This is true even if the plaintiff believes that a correction officer discarded his grievance. For example, the court in *Belile v. Griffin* held, "Plaintiff's mere threadbare allegations that his grievances were intercepted and discarded, without evidence to support such allegation, including any evidence that identifies which defendant, in particular, is responsible for discarding the grievances, are insufficient to excuse his failure to comply with the IGP." *Belile v. Griffin*, No. 9:11-CV-92 (TJM/DEP), 2013 U.S. Dist. LEXIS 47137, *26-*27 (N.D.N.Y. Feb. 12, 2013) (citations omitted), *report and recommendation adopted by* 2013 U.S. Dist. LEXIS 43217 (N.D.N.Y. Mar. 27, 2013).

Even looking at the facts in the light most favorable to Plaintiff, he offers nothing more than conclusory allegations that some unidentified correction officers may have thrown out his grievances. He had an obligation to appeal the grievances he submitted while in keep-lock to the CORC; and, as discussed above, Plaintiff did not appeal any of his claims while at Clinton Correctional Facility to the CORC. Thus, the Court finds that Plaintiff has failed to demonstrate that administrative remedies were unavailable to him, *see Pridgen*, 2018 U.S. Dist. LEXIS 8150, at *18; and, further, Plaintiff has failed to exhaust his administrative remedies with respect to these claims.[2]

---

[2] Since Plaintiff has failed to exhaust his administrative remedies with respect to all of his causes of action, the Court need not reach the merits of Defendants' remaining arguments in support of their motion for summary judgment.

## IV. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment, *see* Dkt. No. 110, is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendants and close this case.

**IT IS SO ORDERED.**

Dated: March 17, 2020
      Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge